CASE 5—ACTION BY WARREN DEPOSIT BANK AGAINST LUTHER R. PORTER AND THE FIDELITY & DEPOSIT CO., OF MARYLAND, ON A BOND GIVEN BY SAID DEFENDANTS AS PRINCIPAL AND SURETY.— JUNE 12.

# Warren Deposit Bank v. Fidelity & Deposit Company of Maryland.

### APPEAL FROM WARREN CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS.—AFFIRMED.

GUARANTY—FIDELITY BOND—APPLICATION—FALSE REPRESENTATIONS— RATIFICATION—APPEAL—PEREMPTORY INSTRUCTION.—WHEN SUS-TAINED.

Held:  1. The trial court's action in granting a peremptory instruction will be sustained if such instruction should have been given for any reason apparent from the record.

2. Where a bank seeks to avail itself of the benefit of the actions of its president in securing the execution of a bond guarantying the fidelity of its cashier, it must accept such actions subject to the president's representations inducing the execution of the contract by the surety.

3. A bank, in accepting its president's action in procuring a bond guarantying the fidelity of its cashier, must be held to have assented to the conditions of the bond providing that the representations made by the president relative to the duties and accounts of the cashier should constitute an essential part and form the basis of the contract.

4.  Kentucky Statutes, 1899, section 639, providing that all state-
    ments or descriptions in an application for insurance shall be
    deemed representations, and not warranties, and shall not pre-
    vent a recovery on the policy unless fraudulent or material,
    does not alter the vitiating effect of a materially false represen-
    tation.

5.  Where representations in an application for an employe's fidelity
    bond are material and false, the bond was invalid, and whether
    they were fraudulent or not was immaterial.

C. U. McELROY AND LEWIS McQUOWN, FOR APPELLANTS.

### POINTS AND AUTHORITIES.

1. The principles applicable to private suretyship for friend-
ship or accommodation do not apply to the contract of guaranty
suretyship. Sup. Council Cath. K. of A. v. Fidelity & C. Co.,
63 Fed. 58; Guaranty Co. v. M. S. Bank & Trust Co., 80 Fed. 773.

2. The contract of guaranty suretyship is an insurance con-
tract and the rules for the construction of insurance policies ap-
ply. Tebbetts v. Mer. Credit Guaranty Co., 73 Fed. 97; People v.
Rose, 51 N. E. 246; Frost's Guaranty Insurance, pp. 15, 68.

3. These contracts must be construed most strongly against
the company. Pauley v. Am. Surety Co., 170 U. S. 133; Guaranty
Company v. M. Sav. & Trust Co., 80 Fed., 766; Lombard Inv. Co.
v. Am. Surety Co., 65 Fed. 476.

4. Making a statement as to the conduct and fidelity of an
employe of a bank to enable him to obtain a bond is not within
the powers of a bank president. Wheat v. Bank, 9 Ky. Rep., 738;
Am. Surety Co. v. Pauley, 170 U. S. 156.

5. Where a guaranty insurance contract omits to provide
a forfeiture for failure to give notice of default the court will
not imply the forfeiture. Kenton Insurance Company v. Downs,
90 Ky., 236; Am. Cen. Insurance Co. v. Heaverin, 18 Ky. Rep.,
190; Carpenter v. German Am. Ins. Co., 52 Hun. 249; Peninsular
Land Co. v. Franklin Ins. Co., 35 W. Va., 667; Sun Mut. Ins. Co.
v. Mattingly, 77 Texas, 162; Cov. Ins. Asso. v. Evans, 102 Penn.
St. 281; McGannon v. Mich. M. M. Fire Ins. Co., 54 L. R. A., 739.

6. When it is doubtful whether a provision of the policy
was intended as a condition precedent to recovery the court will
lean against such a construction. First National Bank v. Hart-
ford Fire Ins. Co., 95 U. S., 673.

7. A "provision" in a contract is not necessarily a condition.
It is merely a stipulation. 23 A. & E. Ency. L., p. 290 (2d Ed.).

FAIRLEIGH, STRAUS & FAIRLEIGH, for appellee.
ST. JOHN BOYLE and SIMS & GRIDER, of counsel.

### STATEMENT.

This action was brought in the Warren Circuit Court by the Warren Deposit Bank (hereinafter, for brevity, called the Bank) against Luther R. Porter and the Fidelity & Deposit Company of Maryland (hereinafter, for brevity, called the Surety Company), upon a bond given to the bank by Luther R. Porter as principal, and the surety company as his surety, conditioned that the surety company should, within three months after the receipt of satisfactory proof, reimburse the Bank to an amount not exceeding twenty thousand dollars for such pecuniary loss of money, securities or other personal property belonging to the bank as the bank might sustain by any fraudulent act or acts committed by Porter in the performance of the duties of cashier of the bank during the term beginning May 1, 1900, and ending May 1, 1901. The bond was dated May 1, 1900. Issue was joined and upon the trial, on motion of the surety company, the court, at the conclusion of the evidence for the plaintiff, peremptorily instructed the jury to find for the defendant, the surety company. Accordingly the jury so found and a judgment was entered dismissing the petition as to the surety company, and from that judgment this appeal is prosecuted.

The bank was incorporated in 1867 and organized for the conduct of its business in 1868. Luther R. Porter became the cashier of the bank in 1888, and continued to act as such until and for about eight months after the making of the bond sued on. When he first became cashier of the bank he gave a bond to the bank in the penal sum of twenty thousand dollars, for the faithful discharge of his duties as cashier, upon which certain individuals were sureties. This individual bond was not limited as to the time it should run, and continued during the entire time of Porter's cashiership. Some time before May 1, 1900, Porter was requested by the bank to give an additional bond, and on that date the bond sued on was made.

The petition avers the fact that Porter was cashier of the bank, the execution of the bond and its terms, and then avers the breach of the bond as follows:

"That while the said bond was in full force and effect, and within the term beginning May 1, 1900, and ending May 1, 1901, the plaintiff suffered pecuniary loss by reason of the fact that the defendant, Luther R. Porter, fraudulently and unlawfully, while acting as cashier aforesaid, and in violation of his duties as such cashier, embezzled, appropriated and used twenty thou-

sand ($20,000.00) dollars of the money of the plaintiff, and fraudulently failed and refused, upon demand, to pay the same, or any part thereof, to plaintiff, or, in whole or in part, to reimburse the plaintiff for said loss, or to any one for its use and benefit.

The petition further avers that proof of loss was made to the surety company on February 4, 1901, and, notwithstanding this fact, that the surety company and Porter failed and refused to reimburse the bank, wherefore it prays judgment in the sum of twenty thousand dollars.

It is to be observed that the petition gives no detail of the alleged embezzlement, no items or dates. The plaintiff was in possession of all the books of account; nevertheless the averment is broadly, without any sort of detail, that the cashier embezzled between May 1, 1900, and May 1, 1901, $20,000 of the funds of the bank.

A copy of the bond is filed with the petition. The bond did not undertake to guarantee the faithful performance of duty on the part of the cashier, but only to reimburse the bank for such loss as might come to it from fraudulent acts on his part. The exact terms are, "Reimburse the employer, to an amount not in excess of the penalty of this bond, for such pecuniary loss as the employer shall have sustained by any fraudulent act or acts committed by the employee during the continuance of this bond in the performance of the duties of his said office or position . . . of money, securities or other personal property belonging to the employer, or for which the employer is responsible."

The defendant, Porter, answered, simply traversing the averments that he had embezzled the funds of the bank, and that loss had been sustained by the bank because of fraudulent acts on his part.

The answer of the surety company made the same traverse, and in addition the following affirmative pleas:

1. A general plea that the bond sued on, was obtained by the plaintiff by fraud and covin, without stating any fact showing fraud in obtaining the bond. (Second paragraph.)

2. The third paragraph is a special plea of fraud in which are stated the details of the alleged fraud in obtaining the bond, viz.: That for more than a year before the making of the bond Porter, as cashier, had been making loans and advances of the money of the bank to several customers for the bank, among whom was the firm of Porter Bros., and which loans and advances were not made in the regular course of business upon notes or discounted bills appearing on the books of the bank, but were rep-

resented only by memoranda or other evidence of indebtedness which were carried by Porter, cashier, as cash, and did not appear on the books of the bank. That whilst this was being done there never was at any time on hand in the bank, or in the hands of Porter, cashier, as much money as was shown by the books to be in the bank, or in the hands of its cashier. That at the time the bond sued on was applied for and at the time the bond was made and delivered, there was a deficit of actual cash in the bank and in the hands of its cashier of more than twenty thousand dollars, which deficit was represented by said irregular loans and advances. That these facts the bank knew at the time the bond sued on was applied for and at the time it was made and delivered, but that defendant did not know them, and had no opportunity of knowing them, and if it had known them or any of them it would not have made the bond sued on.

3. The fourth paragraph of the answer avers that before making the bond the defendant required the bank to answer certain questions in writing relating to the duties and accounts of Porter, cashier. That the bank, through and by its president, C. G. Smallhouse, did make and deliver to the company written answers to such questions. That the bond sued on was made upon the faith of such answers and that the company believed them to be true. That the written paper upon which the questions were propounded, and answers made, and the bond itself provided that the answers to the questions should be conditions precedent and the basis of the bond. That certain stated answers which were material were untrue, and that therefore the bond is void.

4. The sixth paragraph of the answer pleaded that it was agreed by the terms of the bond sued on that the bank should give to the company immediate notice in writing of the discovery of any default or loss under the bond. That before September 3, 1900, the bank discovered and knew the facts upon which the claim asserted in the petition is based. That no notice was given to the company of the discovery of any default or loss under the bond, and that, because of the failure of the bank to give immediate and reasonable notice of the discovery of the alleged default and loss, the bond was avoided.

The reply traverses the general plea that the bond was obtained by fraud and covin. With respect of the special plea of fraud, the reply admits that, at the time the bond sued on was made, that there was a large deficit of cash in the hands of the cashier, amounting to more than twenty thousand dollars, but denies that the bank knew of the deficit at that time. The exact language of this admission in the reply is as follows:

"The plaintiff admits, however, that it learned, subsequent to said time referred to, that at said time, there was a large deficit of cash, amounting to as much as twenty thousand dollars, but at the time referred to the plaintiff had no knowledge of the existence of said deficit, or of any deficit at all, in its said cash, or that any memoranda, or other alleged evidences of indebtedness were carried or held, as cash, to cover said alleged deficit, or that loans or advances were made to Porter Bros. or other of its customers, not in the regular course of business, or upon notes or bills not appearing upon the plaintiff's books."

The reply by its third paragraph denies that the bank made the answers to questions propounded by the company, but admits that its president did so, and that the answers were false in fact, although, as it avers, the president did not know the answers were false at the time he made them. The only effect of the reply in this respect is to deny the authority of the president to make the answers and to contend that his act did not bind the bank.

The reply, by its fourth paragraph, admits that it knew that Porter was short in his accounts as cashier, and that it did not notify the surety company until some time in January, 1901, and undertakes to avoid the effect of these facts by averring that it did not know whether the whole or any part of the shortage occurred before or after the execution of the bond sued on, or whether the whole or any part of the shortage was the result of the fraudulent acts of Porter.

Upon the trial the surety company offered in evidence the written questions and answers delivered by the bank to the company before the bond was made, signed by the bank, by C. G. Smallhouse, president. To the introduction of this paper the bank objected, and the court sustained the objection and refused to allow the paper to be introduced as evidence, to which the company excepted. The ground of this ruling was that the president had no authority to make the answers to the questions propounded, and that his act did not bind the bank in the absence of a resolution of the board of directors authorizing him to make the answers.

At the conclusion of the evidence for the plaintiff the surety company moved the court to peremptorily instruct the jury to find for the defendant company on the ground of the failure of the bank to immediately notify the company of the discovery of the default and loss, as is provided in the bond sued on. The court sustained this motion and directed the jury to find for the surety company.

The direct ground upon which the judgment appealed from rests is the failure of the bank to give to the company immediate notice of the discovery of the default and loss. The language of the bond in this respect is: "That the employer shall immediately give the company notice in writing of the discovery of any default or loss hereunder."

### AUTHORITIES CITED.

May on Insurance (3d ed.), sec. 462; Inman v. Western Fire Ins. Co., 12 Wend. (N. Y.), 452; Edwards v. Lycoming Ins. Co., 75 Pa. Stat., 378; Trask v. State Fire Ins. Co., 29 Pa. Stat., 198; Railway Passenger Association Co. v. Burwell, 44 Ind., 460; Harbour Comrs. v. Guaranty Co. of North America, 22 Canada Sup. Court, 542; Queen v. The Justices of Berkshire, 4 Q. B. Div., 469; 1 Brandt on Suretyship and Guaranty, sec. 198; Frost on Law of Guaranty Insurance, sec. 79; Rice v. Fidelity & Deposit Co., 103 Fed. Rep., 433; American Surety Co. v. Pauley, 72 Fed. Rep., 470; American Surety Co. v. Pauley (No. 1), 170 U. S., 133; Fidelity & Deposit Co. v. Courtney, 103 Fed. Rep., 599; Fidelity & Deposit Co. v. Courtney, 186 U. S., 342; Guaranty Co. of North America v. Mechanics' Savings Bank and Trust Co., 183 U. S., 402; Farmers' & Drovers' Ins. Co. v. Curry, 13 Bush, 312; Germania Ins. Co. v. Rudwig, 80 Ky., 223.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

This action was brought in the Warren circuit court by the Warren Deposit Bank against Luther R. Porter and the appellee, the Fidelity & Deposit Company of Maryland, upon a bond given to the bank by Luther R. Porter as principal and the surety company as his surety, conditioned that the surety company should, within three months after the receipt of satisfactory proof, reimburse the bank to an amount not exceeding $20,000 for such pecuniary loss of money, securities, or other personal property belonging to the bank, as the bank might sustain by any fraudulent act or acts committed by Porter in the performance of the duties of cashier of the bank during the term beginning May 1, 1900. Upon the trial, on motion of the surety company, the court, at the conclusion of the evidence for the plaintiff, peremptorily instructed the jury to find for

the defendant. Accordingly the jury so found, and a judgment was entered dismissing the petition as to the surety company, and from that judgment this appeal is prosecuted.

The petition avers the fact that Porter was cashier of the bank, the execution of the bond and its terms, and then avers the breach of the bond as follows: "That while the said bond was in full force and effect, and within the term beginning May 1, 1900, and ending May 1, 1901, the plaintiff suffered pecuniary loss by reason of the fact that the defendant Luther R. Porter fraudulently and unlawfully, while acting as cashier aforesaid, and in violation of his duties as such cashier, embezzled, appropriated, and used twenty thousand ($20,000) dollars of the money of the plaintiff, and fraudulently failed and refused, upon demand, to pay the same, or any part thereof, to plaintiff, or, in whole or in part, to reimburse the plaintiff for said loss, or to any one for its use and benefit." The answer of the surety company, besides traversing the allegations of the embezzlement charge in the petition within the period covered by the bond, pleaded a number of matters in avoidance of its liability. The only one of them that we have found it necessary to determine in this case is contained in the fourth paragraph of the answer, which avers that before making the bond the defendant required the bank to answer certain questions in writing relating to the duties and accounts of Porter, cashier; that the bank, through and by its president, C. G. Smallhouse, did make and deliver to the company written answers to such questions; that the bond sued on was made upon the faith of such answers, and that the company believed them to be true; that the written paper upon which the questions were propounded and answers made, and the bond itself, provided that the

answers to the questions should be conditions precedent and the basis of the bond; that certain stated answers which were material were untrue, and that, therefore, the bond is void. The reply, by its third paragraph, denies that the bank made the answers to the questions propounded by the company, but admits that its president did so, and that the answers were false in fact, although, as it avers, the president did not know the answers were false at the time he made them. The effect of the reply in this respect is to deny the authority of the president to make the answers, and to contend that his act did not bind the bank. The written questions and answers delivered by Smallhouse, the president of the bank, to the surety company, and alluded to in the pleadings above mentioned, are set out at length by the pleading. Although the special judge who tried this case refused to permit this evidence to go to the jury, and predicated his peremptory instruction upon other facts, we are of opinion that this matter is sufficiently pleaded to have justified its consideration by the court in determining whether the case should have gone to the jury; for it is not material what was the basis of the trial court's action in granting the peremptory instruction if it should have done so for any reason apparent upon the state of the record. At the time the bond sued on was made, C. G. Smallhouse was the president of the bank, and had been for many years. Before the bond was made, the surety company required the bank to answer in writing certain questions relative to the duties and accounts of Porter as cashier, in order that it might determine whether it would or would not make the bond which had been applied for. For this purpose the surety company sent to the bank, or to its president on its behalf, a printed form containing the questions which it wished the bank to answer. This printed form was returned to the surety company with

the answers to the several questions written thereon, and signed, "Warren Deposit Bank, by C. G. Smallhouse, President, Official Capacity." The printed form was appended to the following communication: "Baltimore, April 13, 1900. To the President of the Warren Deposit Bank, Bowling Green, Ky.: Application has been made to this company to issue a bond of security for Mr. Luther R. Porter, cashier, in your service, to the amount of $20,000. The company desires to have answers to the following questions, and these answers will be taken as the basis of the bond, if issued. Very respectfully yours, Edwin Warfield, President." The printed form closed with this statement and signature: "It is agreed that the above answers are to be taken as conditions precedent and as the basis of the said bond applied for, or any renewal or continuation of the same that may be issued by the Fidelity & Deposit Company of Maryland to the undersigned upon the person above named. Dated at Bowling Green, this 14th day of April, 1900. Warren Deposit Bank, by C. G. Smallhouse, President, Official Capacity." Among the questions which were required to be and which were answered by the president of the bank on its behalf, were the following: "Has the applicant uniformly given satisfaction in his personal conduct and habits? Yes." "Has he kept his accounts correctly, and made proper settlements of all cash and securities entrusted to his care? Yes." "At what date and by whom were applicant's books and accounts (including cash, securities and vouchers, if any) last inspected and examined? Board of Directors. Sept. 6, 1899, by ———." "Were they at that time in every respect correct and proper securities and funds on hand to balance? Yes." It is admitted that these answers were false; that in fact at the time they were made Porter had not kept his accounts

correctly, or made proper settlements of all cash and securities intrusted to his care, and at the date of the last inspection of the books on September 6, 1899, they were not correct in every particular, nor were proper securities and funds on hand to balance. On the contrary, at that time Porter had abstracted from the bank, and had used without its consent, or the knowledge of its board of directors, about $30,000 of its cash. This fact was apparent at that time from even a casual inspection of the books of the bank and the counting of its cash on hand and inspection of its securities. The evidence did not show, nor was it pleaded, that any one acted for the bank in the matter of contracting for this bond other than its president, Smallhouse. The only person who is shown to have acted for the bank at all in this transaction was its president.

It is pleaded and most earnestly argued on behalf of appellant that the president had not the inherent power, by virtue of his office, to represent the bank in this matter, and that it was not a duty pertaining to his office, either by the powers conferred by the charter or by-laws of the bank, or by its usage or custom, or by vote or resolution of its board of directors. It is claimed that, on the contrary, the board of directors alone had the power and authority, under appellant's charter and under the law, to represent the bank in the transaction of contracting bond for its cashier, and of making statements and representations to the surety on behalf of the bank regarding same. While it may be true that, as a matter of law, answering questions such as those propounded to the president in this case, and making the representations therein contained, were not within either the actual or the apparent scope of the duties of that office, and that the president was not authorized expressly either by the charter or by anything

appearing upon the minutes of the proceedings of the board
of directors to make such representations on behalf of the
bank, yet it does not follow from these premises that the
president did not act in the bank's behalf in making them.
There is no principle of the law of agency truer or more
familiar than that, although an agent may act in fact
without authority, express or implied from his principal,
his act may become binding upon the latter by its ratifica-
tion. The contracting parties in this matter were three,
to-wit, the bank, Porter, its cashier, and appellee, his surety.
Each of these contracting parties, by the terms of the bond
sued upon, engaged to one or both of the others to do or
not to do certain things. To have been binding upon any
of them, it must have been executed, or its execution must
have been ratified, in a manner binding upon each. Appel-
lant asserts, by seeking to recover upon the bond, that
the contract was made on its behalf, and that it was author-
ized. It is not claimed, nor is it attempted to be shown,
that the board of directors acted at all in that matter, so
far as any proceeding by their body is concerned. The ac-
tion of Smallhouse, then, was that which represented the
bank in that transaction. If the bank would avail itself
of the benefit of his actions, it must take them subject to
his representations and statements that induced the execu-
tion of the contract by the surety. Furthermore, the bond
itself recites: "Whereas, the employer has delivered to the
company certain statements and declarations relative to
the duties and accounts of the employe, which, together
with any statements or declarations hereafter required by
or lodged with the company, do and shall constitute an es-
sential part, and form the basis of this contract." If the
board examined the bond at all, they are bound to have

taken notice of these statements, which is enough to have reasonably put them upon inquiry as to the character of the statements therein referred to. But, whether they actually examined the bond or not, they must in all fairness and reason, be held to have assented to its statements, when appellant elects to claim a recovery upon it. It manifestly would not do to impose upon one party to a contract an obligation in favor of another, which was made to depend upon a condition stated in the contract, and yet relieve the latter from the condition because he had not noticed it. Having accepted the result of its president's action in procuring the bond for it, and being required to take notice of all material statements and conditions contained in the bond, appellant is as much bound by these statements and the concurrent representations made by its president and referred to in the bond as if his action and statements had been expressly authorized by the most solemn and specific entry of record upon the minutes of the board of directors' book of proceedings. We can not regard the case of American Surety Co. v. Pauley, 170 U. S., 133, 18 Sup. Ct., 552, 42 L. Ed., 977, as announcing a different rule from the above. In that case it was shown that the president of the bank, who made the representations as to the character, etc., of its cashier, was in collusion with the cashier to loot the bank, and that these statements were but a step made toward consummating that end. It would scarcely need such eminent authority to sustain the conclusion that, when an agent steps aside from the duty enjoined by his position to commit a fraud upon his principal, his representations and acts in that affair are not those of the principal. Guaranty Co. of North America v. Mechanics' Savings Bank & Trust Co., 183 U. S., 402, 22 Sup. Ct., 124, 46 L. Ed., 253. In Rice *et al.* v. Fidelity and Deposit

Co., 103 Fed., 427, 43 C. C. A., 270, as to the effect of the representations contained in a similar statement to that now being considered, the United States Circuit Court of Appeals, upon a very full consideration and treatment of the subject, thus fairly stated the law: "The parties expressly agreed in writing that the statement of the employers was a part of their contract; that it should be not only the basis of the bond, but a condition precedent, without compliance with which there could be no recovery upon the obligation. The conclusion is irresistible that under this agreement the declaration in this case was of the nature of a warranty, and not of a representation, and our conclusion is: A written statement, made by employers to the obligor in a bond of indemnity against the dishonest acts of their employe, to the effect that they will invariably apply certain checks to his action, which the parties expressly agree, by the statement itself and by the bond, shall be the basis of the latter, and a condition precedent to a recovery upon it is of the nature of a warranty, and not of a representation, and a failure to comply with the promise it contains is fatal to an action upon the bond. Indemnity Co. v. Wood, 19 C. C. A., 264, 73 Fed., 81, 84; American Credit Indemnity Co. v. Carrollton Furniture Mfg. Co., 36 C. C. A., 671, 95 Fed., 111, 113."

Appellant contends that the provisions of section 639, Kentucky Statutes, 1899, as follows: "All statements or descriptions in any application for a policy of insurance shall be deemed and held representations and not warranties; nor shall any misrepresentations, unless fraudulent or material, prevent a recovery on the policy"—should apply, and that the representations contained in the statements made by Smallhouse can not, under that section, be treated as warranties. Previous to the enactment of that

section of the statute, and in those jurisdictions where similar statutory provisions do not exist, such representations were held to be warranties, and, consequently, if untrue to any extent, whether or not material, the policy or contract was invalidated. The case of Rice v. Fidelity, etc., Co., supra, proceeds upon that theory, and its citation is subject to the statutory modification obtaining in this State. The provisions of the section just quoted ought to be applied to this class of contracts. It is found in the chapter of the statutes relating to insurance. The nature of the contract besides is so clearly akin to, if, indeed, it is not a species of, insurance, that its classification with other matters of insurance was likely enough purposely done by the Legislature. It is not material, though, whether the statute does or does not apply to bonds made for sureties, as the statute, properly construed, in no way affects the result and ultimate effect of a materially false representation. Farmers' & Drovers' Ins. Co. v. Curry, 13 Bush, 312, 26 Am. Rep., 194, modified in its extent by Germania Ins. Co. of New York v. Rudwig, 80 Ky., 223, 3 R., 712.

That these misrepresentations were material to the risk in this case there can be no manner of doubt. That they were indisputably false is equally clear. Whether they were fraudulent or not is not, therefore, particularly material. We are of opinion that the effect of these material misrepresentations was to invalidate the bond.

The judgment is therefore affirmed.

Whole court sitting, except Judge Settle.