CASE 14—ACTION BY BLACKLY, HURST & CO. AGAINST THE UNITED
STATES FIDELITY & GUARANTY COMPANY TO RECOVER ON A FI-
DELITY BOND.—DEC. 16.

# United States Fidelity & Guaranty Co. v. Blackly, Hurst & Co.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

JUDGMENT FOR PLAINTIFFS AND DEFENDANT APPEALS. REVERSED.

FIDELITY INSURANCE—UNTRUE STATEMENT BY EMPLOYER—DUE CARE
TO ASCERTAIN TRUTH—RIGHT TO GO TO JURY—SPECULATION BY
EMPLOYE—EMPLOYER'S KNOWLEDGE—SPECIAL INSTRUCTIONS.

Held:  1. In an action on a fidelity bond, defended on the ground
that the plaintiff, in a statement required of him prior to the
issuance of the bond, asserted that, to the best of his knowl-
edge and belief, the employe's accounts were correct, and that
he was not in arrears, when, by due care in examining such
accounts, a shortage could have been discovered, an instruction
to find for plaintiff unless the statement was false when made,
to the best of plaintiff's knowledge and belief, was erroneous,
since defendant was entitled to go to the jury on the issue
of plaintiff's due care to ascertain the truth before making
the statement.

2. Defendant also alleged that plaintiff stated that nothing was
known concerning the employe's habits affecting his title to
confidence, when in fact the employe was engaged in haz-
ardous speculation, to plaintiff's knowledge. HELD, that this
issue should have been submitted to the jury under special in-
structions applicable thereto.

BODLEY, BASKIN & FLEXNER, AND COLEMAN R. ROBINSON,
COUNSEL FOR APPELLANT.

CLASSIFICATION OF QUESTIONS DISCUSSED, WITH
AUTHORITIES.

1. Where employer makes a statement to induce a guaranty
company to go on the bond of his bookkeeper, to the effect that
the accounts of the employe were periodically examined and

found correct up to date, it was error in the court to instruct the jury to find for plaintiff, unless the statement was false to the best of the knowledge and belief of the employer, the qualifying words "to the best of the knowledge and belief" not being contained in the statement. An absolute statement imports knowledge of the party making it, whereas a statement thus qualified does not.

2. Where defendant averred that employer either did not examine the books as recited in his statement, or if he had examined them he had notice of prior defalcations, the issues of fact raised thereby should have been left to the jury.

3. Examination must be made with reasonable diligence in order to amount to an examination. Carstairs v. American Bonding Co., 112 Federal, 62; if not made with such diligence, the party making it commits a fraud. Graves v. Lebanon National Bank, 10 Bush, 29. Whether such examination was made was a question of fact for the jury.

4. The circuit court erred in holding that the unqualified statement of the employer that the accounts of the employe were correct must have been known to be false by the employer before the bond is avoided. Actual fraud is not necessary in order to nullify the bond.

5. The law relieves the surety where employer makes a statement that the employe's accounts were previously correct and that he had examined them, unless he had in fact made an examination with reasonable diligence. It was error to refuse to leave it to the jury to determine whether an examination had been made at all by the employer, and, if made, whether made with reasonable diligence, or whether by an examination with reasonable diligence the falsity of the statement could have been discovered. Graves v. Lebanon National Bank, 10 Bush, 29; Connecticut M. L. Ins. Co. v. Scott, 81 Ky., 540; Commonwealth v. Berry, 95 Ky., 447; Trimble v. Reid, 97 Ky., 720; Belleview B. & L. Assn. v. Jeckel, 104 Ky., 164; Deposit Bank of Midway v. Hearne, 104 Ky., 823; Bank of Tarboro v. Fidelity & Deposit Co., 35 Southeastern, 590.

6. The only case holding that a false statement of the employer, even when made "to the best of his knowledge and belief," must be shown to have been made in bad faith is Mechanics' S. B. & T. Co. v. Guaranty Co. of N. A., 68 Federal, 459. This case was reversed in 182 U. S., 132, and that doctrine of the lower court expressly disavowed. In case at bar the statement was absolute, and not "to the best of the knowledge and belief" of plaintiffs.

7. Where bond is given and accepted upon the faith of a

statement made by the employer, it is a fraud for the employer to make such statement without having used reasonable diligence to inform himself. Graves v. Lebanon National Bank, supra; Mechanics' S. B. & T. Co. v. Guaranty Co. of N. A., 182 U. S., supra; Warren Dep. Bank v. Fidelity Co. of Maryland, 25 R., 289.

8. Where the employer stated that he knew nothing of the habits or antecedents of the employe affecting his title to confidence, such statement was false and the bond avoided, where he knew that the employe was engaged in speculating upon the rise and fall of tobacco. (Guaranty Co. of N. A. v. Mechanics' S. B. & T. Co., supra.) The question of the falsity of that statement should not have been taken from the jury.

9. Where the employer and the employe, in applying for the bond, stated that the employe would be engaged in no other business, such statement was false where it appears that the employe was dealing in tobacco regularly, having had 106 transactions amounting to $12,244.02 in a little over a year. Such regular and continuous transactions amounted to a business, and it should have been left to the jury to decide if these transactions constituted a business or occupation.

DODD & DODD, ATTORNEYS FOR APPELLEES.

1. The appellees claim that the contract sued on is, in effect, one of indemnity insurance, and should be interpreted with the view of accomplishing that end; that the business, honesty and fidelity insured by such contracts is not that kind of enforced honesty which comes of a want of opportunity to be dishonest, but that which is to protect the innocent beneficiary in spite of opportunity and temptation. This is the only kind of insurance indemnity worth the premium, which was a fair consideration for the risk of loss, under the contract, and in the absence of some stipulation to the contrary, is what was bargained for. An employer would need no such insurance indemnity against that close and relentless vigilance which would make stealing, or dishonesty impossible, and under the contract sued on, the appellees were bound to no greater watchfulness for the benefit of the appellant than that which ,in plain words, they contracted to use.

It is not disputed that the appellees' examinations were made in good faith, and that they believed the accounts of Barnett to be correct when this contract was made, and were ignorant of any different state of facts until September, 1901, and imme-

diately upon their discovery they notified appellant and dis-charged Barnett. However careless the appellees' examinations may have been, their books were at all times open to the ex-amination of appellant, and so long as the appellees acted in good faith and honestly believed the accounts to be correct, they are protected by the bond. There is no stipulation in the con-tract for effective or expert supervision of Barnett's accounts. The employer's printed endorsement on the application of Bar-nett is expressly qualified by the words "to the best of my knowledge and belief, and the jury found that the same was truthfully made by appellees.

There is not a scintilla of evidence conducing to show that appellees ever had any suspicion of Barnett's dishonesty prior to the happening of the defalcations involved in this suit.

2. Where bonds of this kind are executed by a corporation, organized expressly to furnish such bonds for a profit in the nature of a premium, the rule of construction applicable to ordinary sureties does not fully apply. The rule applicable to contracts of life and fire insurance policies is the true rule ap-plicable to this case, because it is executed for a full money consideration, and its terms are prescribed by the corporate surety. Hence all implications, as well as doubtful language, should be construed most strongly against the corporate surety, and in favor of the indemnity which the assured bargained for and had reasonable ground to expect.

3. Where one of two innocent parties must lose, that one which trusts most and procures the continuance of the employe in his fiduciary position must bear the loss, especially when it has formally contracted for a money consideration to do so.

4. There was no error committed to the prejudice of appel-lant, and the verdict is in accord with the evidence.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—REVERSING.

On the 17th of November, 1900, C. M. Barnett, requested the United States Fidelity & Guaranty Company, of Balti-more, Md., to go security for his honesty and fidelity as bookkeeper and cashier of the firm of Blackly, Hurst & Co., who were engaged in the tobacco business in Louisville, Ky., from the 1st day of December, 1900, to the 1st day of December, 1901. The application was made by Barnett upon one of the printed forms of the

guaranty company, which provides for and requires from the employers of the applicant a statement as to the personal conduct, antecedents, and integrity of the applicant. In obedience to this requirement, Blackly, Hurst & Co., by J. T. Blackly, made this statement: "The replies of the applicant herein are to the best of my knowledge and belief, correct. He has been in the service of the undersigned employer since September 1, 1898, filling the position of bookkeeper and cashier, and has continuously filled the position for which this bond is required since that date. He has always to the best of my knowledge and belief given satisfaction in his personal conduct and performance of duties, and kept his accounts faithfully and without default. When last examined or audited all accounts of his office were found in every respect correct up to date. (This was followed by the words, "Periodically examined by firm.") He has not been nor is he at present, so far as I know or believe, in arrears, default, or with unsettled balance in this or any previous service. I know nothing concerning his habits or antecedents affecting his title to confidence, and I know of no reason why the guaranty hereby applied for should not be granted." In response to this application, the guaranty company executed the bond applied for, which contained the following recitation: "Whereas the employers (Blackly, Hurst & Co.) have delivered to the United States Fidelity & Guaranty Co. a statement in writing relative to its responsibility, and checks to be used by the employee in said position, and in further consideration of $25.00 paid as a premium for the period from December 1, 1900, to December 1, 1901, and upon the faith of said statement as aforesaid by the employer, it is hereby agreed and declared that subject to the provisions herein

contained, which shall be conditions precedent on the part of the employer to recover under this bond, the company shall within three months next after notice accompanied by satisfactory proof of loss as hereinafter mentioned, has been given to the company, make good and reimburse to the employer all or any pecuniary loss sustained by the employer of money, securities, or other personal property in the possession of the employee, or for the possession of which he is responsible by any act or fraud or dishonesty on the part of said employee, in connection with the duties of the office or position hereinbefore referred to, occurring during the continuance of this bond." On the 2d day of April, 1902, the appellees, Blackly, Hurst & Co., brought this suit against the appellant, the United States Fidelity & Guaranty Company, and C. M. Barnett, upon the bond executed by them as surety for Barnett, in which they allege that between December 1, 1900, and September 7, 1901, the defendant Barnett, as bookkeeper and cashier of plaintiffs, and in the line of his employment, had received and fraudulently appropriated to his own use $811 of their money, which he failed to account for. The petition, also contains other formal averments necessary to a recovery on the bond. Appellant, in its answer, denied its liability for the moneys sued for, on two grounds: First, because, as it alleges, Barnett had not kept his accounts faithfully as cashier previous to his application to it to become his security, but was at that time in default to plaintiff in sums aggregating $625, which he had fraudulently abstracted and converted to his own use subsequent to the 11th of May, 1900, and prior to November 17, 1900, by means of false entries and footings upon the books of plaintiffs, which, if not known to them, could have been known by the exer-

cise of slight care, when the application was made to them, but which were not known to the defendant when it executed the bond sued on. It also charges that it was deceived and overreached by plaintiff's statement that they knew nothing concerning the habits or antecedents of the insured affecting his title to confidence, or any reason why the guaranty should not be granted, when, as a matter of fact, they well knew that Barnett was at that time, and had been for a considerable time before the bond was applied for, engaged in speculating in tobacco—a highly hazardous and dangerous form of gambling—the credit and money therefor being furnished by plaintiffs. Upon the trial, appellant introduced a number of expert accountants, who testified: That during May, 1900, Barnett's books show three false entries and footings, aggregating $250; in June, one false entry and footing of $50; in September, one false entry and footing of $100; in October, one false entry and footing of $100; and in November, prior to the date of Barnett's application to defendant, false entries and footings amounting to $125; in all, aggregating $625. That these false entries were cunningly made, and were likely to be overlooked by any one examining the books who was not an expert accountant, or who was not specially looking for them, but that they would have been discovered by an accurate and careful addition of the various columns of figures by any ordinarily competent person. While, on the other hand, Mr. Blackly, a member of the firm, testifies that the fiscal year of the firm ended on September 1st, at which time a tolerably careful examination of the books was made—as much so as the current business would permit a member of the firm, who had daily duties to perform, to make; that this examination was made by adding up the columns of the cash-

book back to where it had been previously examined, and that the balance in bank, the cash account, and sales notes, which formed the whole cash account, were compared; that this cash account was frequently examined during the year, as carefully as his time would permit, and that he thought that the books were correct when these examinations were made, but had been subsequently altered by Barnett; that the last general examination in which a balance sheet was drawn off was made in September, 1900; that they discovered in October, 1901, that the cash account was out of balance; and that this fact led to the discovery of the shortage sued for in this action. Upon cross-examination Mr. Blackly admitted that, whilst he added up all the columns of the cashbook and bankbook, he had not gone into the ledger accounts, for lack of time; that he was a fairly good bookkeeper.

On this state of facts, the court gave the jury the following instructions:

"(1) The court instructs the jury that the application for a bond sued on in this case contained the following statements: 'He (meaning the defendant, Clarence M. Barnett) has always to the best of my knowledge and belief given satisfaction in his personal conduct and performance of duties, and kept his accounts faithfully and without default. When last examined or audited, by firm, all accounts of this officer were found in every respect correct up to date. He has not been, nor is he at present, so far as I know or believe, in arrears, default, or without unsettled balance in this or any previous service. I know nothing concerning his habits or antecedents affecting his title to confidence, and I know of no reason why the guaranty hereby applied for should not be granted.' And said application was

signed by the plaintiffs.   Unless the jury shall believe from the evidence that one or more of said statements, when made, were not true, to the best of the knowledge and belief of the plaintiffs, or either of them, the law is for the plaintiffs, and the jury should so find.

"(2.)   But if the jury shall believe from the evidence that these statements contained in said application, and set forth in instruction No. 1, or any of them, was, when made, untrue, to the best of the knowledge and belief of the plaintiffs, or either of them, the law is for the defendant, and the jury should so find.

"(3.)   If the jury shall find for the plaintiff, it should be for the sum of $819, with interest from October 10, 1901.

"(4.)   If the jury shall find for the defendant, they shall so say by their verdict, and no more."

Under the above instructions, the jury found for the plaintiffs, and the defendant appeals to this court, and insists that the instructions quoted supra, do not define the correct rule for the measurement of appellees' duties and responsibilities growing out of the execution of the bond sued on.   In the recent case of Warren Deposit Bank v. Fidelity & Deposit Company, 116 Ky., 38, 25 R., 289, 74 S. W., 1111, it was decided that section 639 of the Kentucky Statutes, which provides that "all statements or descriptions in any application for a policy of insurance shall be deemed and held representations, and not warranties, nor shall any misrepresentation, unless material or fraudulent, prevent a recovery on the policy," applied to bonds of the character sued on in this action, but that misrepresentations which were material to the risk in this character of cases, whether fraudulent or not, would invalidate the bond.   In Graves v. Lebanon National Bank, 73 Ky., 23,

19 Am. Rep., 50, the court said: "There is no principle of law better settled than that persons proposing to become sureties to a corporation for the good conduct and fidelity of an officer to whose custody its moneys, notes, bills, or other valuables are intrusted have the right to be treated with perfect good faith. If the directors are aware of secret facts materially affecting or increasing the obligations of the sureties, the latter are entitled to have these facts disclosed to them, a proper opportunity being presented. . . . A fraud may be perpetrated as well by the assertion of facts that do not exist, ignorantly made by one whom the person acting upon the assertion has the right to suppose used reasonable diligence to inform himself, as by concealing facts known to exist, which in equity and good conscience ought to have been made." In the case of Deposit Bank of Midway v. Hearne, 104 Ky., 819, 20 R., 1019, 48 S. W., 160, this court decided that whenever the directors of a bank become aware of the embezzlement of a clerk, or may by the exercise of slight care have become so, they owe to the surety to discharge the clerk, and thus terminate the surety's further risk. In Belleview Bl. & L. Ass'n. v. Jeckel, 104 Ky., 159, 20 R., 460, 46 S. W., 482, it was decided: "If a party taking a guaranty from a surety conceals from him facts which go to increase his risk, and suffers him to enter into the contract under false impressions as to the real state of facts, such concealments will amount to a fraud, because the party is bound to make the disclosure, and the omission to make it under such circumstances is equivalent to an affirmation that the facts do not exist." Quoting Story on Equity Jurisprudence, section 215. The law requires of an employer, who makes representations material to the risk for the purpose of inducing another to

become bound as the surety of one of his employes to him, more than the mere belief on his part of the truth of such representations. His duty, under such circumstances, requires that, before making such representations, he should use ordinary care to know that they are true. Lawson on Contracts, section 238, on this point, says: "Where persons take it upon themselves to make assertions as to which they are ignorant, whether they are true or untrue, they are as responsible as if they had asserted that which they knew to be untrue. Whether a party misrepresenting a fact knew it to be false, or made the assertion without knowing whether it were true or false, is wholly immaterial. For the affirmation of what he does not know or believe to be true is as unjustifiable as the affirmation of what is known to be false, and the same is true where the party is negligent or ought to have known or remembered the truth, and did not." Whether appellee used ordinary care to post himself as to the condition of Barnett's accounts before he made the statement to appellant was a question for the jury. For the same reason we think the jury, under proper instructions, should have been allowed to determine whether the plaintiffs, prior to the execution of the bond, knew that Barnett was engaged in any gambling or speculative business which would have materially enhanced the hazard of the risk assumed by appellant.

For the reasons indicated the judgment is reversed, and cause remanded for proceedings consistent with this opinion.

Petition for rehearing by appellee overruled.