[No. 4698.]

THE AMERICAN BONDING AND TRUST COMPANY
v. BURKE ET AL.

1.  Insurance—Bonding Company—Bond—Rules of Construction
    —Warranties—Representations.

A bond issued by a surety company indemnifying an employer against larceny or embezzlement by an employee, though denominated a bond, is, in legal effect, analogous to a policy of insurance; and, generally speaking, the same rules of interpretation and construction that apply to fire and life insurance policies are applicable to it. If its language is uncertain or ambiguous, the interpretation must be in favor of the insured; if any clause is susceptible of two constructions, one in favor of the insurer and the other in favor of the insured, the latter

4

will prevail if it is consistent with the general object for which the bond is given; and statements or declarations by the insured are to be taken as representations merely and not warranties unless the written contract of indemnity itself expressly or by appropriate reference, makes them warranties.—P. 54.

2. Same—Bonding Company—Bond—Materiality of Misrepresentations.

Where a surety company, before issuing a bond indemnifying an employer against loss through embezzlement or larceny by the employee, required a statement from the employer as to when the employee's accounts were last examined, whether they were correct, whether there was ever any shortage, and whether the employee was indebted to the employer at the time, the answers required were material to the risk, and if untrue rendered the bond void at the option of the obligor; nor is it material whether such answers be considered warranties or representations, or whether they were made in good faith, for if in part untrue, they having been made in response to a specific inquiry upon which the obligor relied to his injury, the bond may be avoided at the latter's option.—P. 58.

3. Appellate Practice—Cross Assignments of Error.

An appellee, alleging error, is not in position to have his cause reversed in the appellate court in the absence of an assignment of cross error.—P. 59.

4. Insurance—Bonding Company—Representations for Bond.

Where a surety company issued a bond to a local agent with instructions not to deliver it until the employer of the assured had made written answers to additional questions, and the employer knew of such condition and received the bond from the local agent and afterwards furnished such answers, such additional statement was properly held to be the basis of the bond; and, in addition, by the express terms of the second statement there was an agreement of the parties that it should be taken and deemed as the basis of the bond, so even if the bond was issued without a preliminary employer's statement, it was as competent for the parties to make a new agreement or modify the old one as it was for them to enter into the original contract.—P. 59.

*Appeal from the District Court of Teller County.
Hon. William P. Seeds, Judge.*

Action by P. E. C. Burke and George F. Frye, copartners as Burke & Frye, against the American

Bonding and Trust Company of Baltimore, Maryland. From a judgment for plaintiffs, defendant appeals.

*Reversed and remanded, with instructions to dismiss the case.*

Mr. A. M. STEVENSON and Mr. DANIEL PRESCOTT (Mr. RALPH W. SMITH and Mr. JOHN M. WALDRON of counsel), for appellant.

Mr. V. O. TEMPLE and Mr. S. D. CRUMP, for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This is an action on a bond of indemnity issued by the appellant bonding company, a corporation, to The S. T. Miller Investment Company, a corporation, obligee, to save the latter harmless against loss occasioned by the larceny or embezzlement of its general manager, S. T. Miller. The action is brought by the plaintiffs, Burke and Fry, as the assignees of the original obligee's alleged cause of action upon the bond. The indemnity was applied for by S. T. Miller, the employee. According to the custom, what is called in the record an "employer's statement" was required of the obligee. This statement consists of a list of printed questions to which the obligor deemed it material to have the answers of the employer before issuing the policy. To the questions embodied in the statement first sent out, answers were made by Burke, the president of the investment company, and one of the plaintiffs, and returned to the obligor. These answers were unsatisfactory to the obligor, which declined to take the risk upon them as a basis, but sent an executed bond, as applied for, to its local agents at Cripple Creek, with directions not to deliver the same until a satisfactory employ-

er's statement was returned. At about the same time, the obligor sent to the obligee a second statement or printed list, like the first one, with the information that it desired to have answered the questions therein propounded, and that such answers would be taken as the basis of the bond, if issued.

There is no question but that Burke, as president of the investment company, had full authority to make these answers, and the bond was accepted by that company, which paid the premium upon it. The second statement was made by Burke and delivered to the company on May 29, 1901. The bond was dated May 14, 1901, and about May 20, delivered to the obligee, though contrary to the instructions of the obligor—but that feature is not important here. When Burke made the answers contained in the second statement, he knew that it was the intention of the obligor not to issue the bond until a satisfactory statement was made by him, and when he did make and return it, he knew that the bond of May 14 had been delivered, and then expressly agreed that the statement should be a condition precedent to the binding force of the contract of indemnity. Indeed, Burke was the only officer of the company in Colorado during the time of the various transactions who was authorized to act for the company, Miller, the employee, being the only other official in the state. Included in the second statement, were the following questions and answers:

"Q. When were his accounts last examined?

"A. April.

"Q. Were they at that time in every respect correct, and proper securities, funds and values on hand to balance?

"A. Yes.

"Q.  Is there now, to your knowledge, any shortage due you by applicant?

"A.  No.

"Q.  Has he ever been short with you?

"A.  No.

"Q.  Is he now in debt to you?

"A.  No."

At the end of these questions and answers was the following statement, and immediately before the signature of the investment company:

"It is agreed that the above answers are to be taken as conditions precedent, and as the basis of the said bond applied for, or any renewal or continuation of the same that may be issued by The American Bonding and Trust Company of Baltimore City to the undersigned, upon the person above named."

The bond expressly recited that it was made, issued and accepted upon the condition, *inter alia,* that all the representations made by the employer, his or its officers, to the surety company, are warranted by the employer to be true.

Before a court and jury there was a verdict for the plaintiff, and the defendant company has appealed and made numerous assignments of error.

1.  The objections that the complaint does not state facts sufficient to constitute a cause of action, and that the plaintiffs have not the legal capacity to sue for the breach of this bond because there was no valid assignment of the obligee's cause of action thereunder, are not discussed.  A correct disposition of these and some other assignments of error to which we shall give no further attention, might require a reversal of the judgment and a remanding of the cause for a new trial; but, in the view we take of the case, it is important to consider only one or two propositions, the determination of which makes

the bond unenforceable, and compels a dismissal of the action.

2.    Learned counsel for both parties are in accord that this instrument, for a breach of whose conditions the action was brought, though denominated a bond, is, in legal effect, analogous to a policy of insurance.  Speaking generally, the same rules of interpretation and construction, therefore, that apply to fire and life insurance policies, are applicable to it. If its language is uncertain or ambiguous, the interpretation must be in favor of the insured; and, if any of its clauses is susceptible of two constructions, one in favor of the insurer and the other in favor of the insured, the latter will prevail if it is consistent with the general object for which the bond is given. Statements or declarations by the insured are to be taken as representations merely, and not warranties unless the written contract of indemnity itself expressly, or by appropriate reference, makes them warranties.

Under the conceded facts of this case, it is immaterial whether the answers set out in the foregoing statement be considered warranties or representations, as a review of some of the authorities demonstrates.  A case quite in point, in many respects, to the one in hand, is *Rice v. Fidelity and Deposit Company*, 103 Fed. 427.  It was there held that, since the bond under consideration rested upon the faith of the employer's statement, and because, in the latter, there was an express agreement that the statement should be taken as a condition precedent and as the basis of the bond, the answers to the questions propounded were to be deemed warranties, and not representations.  It was said, in the opinion, that the crucial distinction between a representation and a warranty is, that one is not, and the other is, a part of the contract between the parties, and that the

truth of the one is not, and the truth of the other is, a condition precedent to a recovery upon the policy or bond to which they relate.

But, suppose the declarations of the employer are mere representations. In Ostrander on Fire Insurance (2d ed.), § 135, the learned author says that the difference between a warranty and a representation lies in the fact that, in the former, the question of materiality is closed; in the latter, it is left open. If untrue in the former case, the policy is voidable at the option of the obligor; if untrue in the latter, and also material, the same result follows. The same author, at section 139, says that warranties and conditions precedent are essentially the same, and, if they are untrue, the policy issued upon the basis of them is voidable.

In *State Ins. Co. v. DuBois,* 7 Colo. App. 214, 224, the court referred with approval to 1 Wood on Insurance, § 236, where it is said that, in order to avoid a policy on the ground of misrepresentation on the part of the insured, it is not necessary that a fraudulent purpose or intent on his part should be established. It is enough if the representation was, in fact, false, and was material to the risk.

In *Travelers' Ins. Co. v. Lampkin,* 5 Colo. App. 177, the same doctrine is announced. In *Amer. Credit Co. v. Carrollton Fur. Mfg. Co.,* 95 Fed. 111, the same doctrine is laid down. In the *Jefferson Ins. Co. v. Cotheal,* 7 Wend. 73, the court says that a false representation is no breach of the contract unless made a warranty, but, if material, the representation avoids the policy on the ground of fraud, or because the underwriter has been misled by it. In the leading case of *Pawson v. Watson,* 2 Cowper 785, Lord Mansfield, with great clearness, presents the point that "if there is fraud in a representation, it will avoid the policy, as a fraud, but not as a part of the agree-

ment." And, in speaking of a representation made by the applicant as of his own knowledge concerning which he knows nothing, though acting in good faith, the great jurist said: "It is equally false to. undertake to say that which he knows nothing at all of, as to say *that* is true, which he knows is not true." The better and great weight of authority is, that a false representation,. even though not a warranty, if it be of a fact material to the risk, avoids the policy irrespective of the good faith of the one who makes it.—*Carpenter v. Am. Ins. Co.,* 1 Story 57; *Carrollton Fur. Co. v. Am. Credit Indem. Co.,* 124 Fed. 25.

In the latter case, Judge Wallace quotes with approval the language of the court in *Campbell v. N. E. M. Life Ins. Co.,* 98 Mass. 402. One of the points there ruled was, that where the question of the materiality of the representations depends upon circumstances, and not upon the construction of any writing, it is a question of fact to be determined by the jury; but, where the representations are in writing, their interpretation, like that of any other instrument, belongs to the court.

In *Hoover v. Royal Neighbors,* 65 Kan. 616, the court, in a case quite similar to the one we are considering, held that answers made in response to specific inquiries. of the obligor, independent of the stipulations and warranties made in the application and certificate, were material to the risk assumed, and, being material and untrue, there could be no recovery by the obligee.

In *Warren Dep. Bank v. Fidelity Co.,* 116 Ky. 38, it was held that, where misrepresentations are material to the risk and are unquestionably false— whether they are fraudulent or not is immaterial— the policy may be avoided by the obligor where he has relied upon the truthfulness of the statements, and has been deceived thereby. The same court, in

*U. S. Fid. & G. Co. v. Blackly et al.,* reported in 13 Insurance Law Journal (new series) at page 162 (*Ibid.,* 77 S. W. 709), affirms the Warren case.

In *Guarantee Co. v. Nat. Bank,* 95 Va. 480, the court said that, where representations were of existing facts and were material and presumably within the peculiar knowledge of the applicant, and constituted an inducement to the obligor on which it had a right to rely, and in relying upon which executed the bond, if the representations were untrue, it is immaterial whether plaintiff knew that they were false or honestly believed them to be true. For it was said that, if a party innocently misrepresents a fact by mistake, the effect is the same on the party who is misled thereby as if he who made the misrepresentation knew it to be positively false. The real question in such a case is not what the party making the representation knew or believed, but was the representation false, and the other party misled by it?

In *Carrollton Fur. Co. v. Amer. Cr. I. Co.,* 115 Fed. 77, the language of Judge Story, in *Carpenter v. Am. Ins. Co., supra,* was quoted with approval. The late case of *Guarantee Co. v. Mechanics' Co.,* 183 U. S. 402, is in line with these cases. *Bankers' Life Ins. Co. v. Miller,* 59 Atl. 116, says that a material representation, substantially false, made by an applicant for life insurance, in reliance upon which a policy is issued to him, avoids the policy, whether it be made intentionally or in good faith. See also 16 Am. & Eng. Enc. Law (2d ed.) 933.

To the same point are cases in our own reports. In *Stimson v. Helps,* 9 Colo. 33, the court says that a contracting party is liable for fraud upon his express representations concerning facts material to the treaty, the truth of which he assumes to know, and the truth of which is not known to the other party, where the representations were false and the other

party, relying upon them, has been misled to his injury; and it was said that it is not necessary, in order to constitute the fraud, that the party who makes a false representation should know it to be false. If he makes it as of his own knowledge, not knowing whether it be true or false, and it is in fact untrue, he is guilty of fraud, as much as if he knew it to be untrue. In such a case, he acts, to his own knowledge, falsely, and the law imputes a fraudulent intent.

In *Lahay v. City Nat. Bank of Denver,* 15 Colo. 339, and in *Connell v. El Paso G. M. & M. Co.,* 33 Colo. 30, this doctrine is approved.

Our conclusion, therefore, is that a misrepresentation material to the risk, made in response to a specific inquiry, upon which an obligor relies to his injury, avoids the policy at the option of the latter. So that, applying the principle to the facts of this case, whether Burke's answers given to the questions propounded by the obligor were warranties or representations merely, they avoid the policy if, in fact, untrue, irrespective of his good faith in making them. That they were material to the risk is without question, and it was the duty of the court below so to declare from the written language itself. That the answers were untrue is conceded, and that the facts were presumably within the knowledge of that officer is beyond question. The employee was indebted to the investment company obligee at the time and was, and for several weeks had been, a defaulter. No examination whatever was made of the books of the company in April, or at any other time, by any of its officers, or by any other person, and if such examination had been made, the books, upon their face, would have shown that the answers which the president made in response to the specific inquiries were absolutely untrue.

The court below admitted the second employer's statement over the objection of the plaintiff, though it was not made or delivered until after the bond was issued. Not having assigned cross-error, the plaintiffs are not in a position to question this action, even if it was wrong. But the court was right in its ruling, and the second employer's statement must be considered as the basis of the bond, upon the strength of which the same was issued. At the time the answers of the obligee's president were made and the statement sent to the obligor, this officer knew that a satisfactory statement was a condition precedent to the issuance and delivery of the bond, and the rights of the parties are, therefore, to be measured the same as though the statement preceded it, or was contemporaneous therewith.

For another reason, also, the plaintiffs are bound by this statement. Even if the bond was issued without a preliminary employer's statement, it was as competent for the parties to make a new agreement or modify the old as it was for them to enter into the original contract. By the express terms of the second employer's statement there was an agreement of the parties that it should be taken and deemed as the basis of the bond. In *Rice v. Fid. & Dep. Co., supra,* this question is so ruled.

The trial court, in its various rulings upon the evidence and in its instructions to the jury, proceeded upon an erroneous theory. It declared not only that there were no warranties by the employer of the truthfulness of its statements, but that, even though the answers which have been quoted were false, the plaintiffs' recovery was not defeated unless they were fraudulently made and with the knowledge upon the part of the president of the obligee company that they were false at the time they were made. Upon the uncontradicted facts in this record

the trial court should have directed the jury to find for the defendant, since the representations of the obligee were in response to the obligor's specific inquiries, they were material to the risk, and were false and fraudulent in fact and in law. The obligor expressly advised the obligee that the answers were deemed material. We think they were material to the risk as matter of law. They were untrue in their entirety. The obligor relied upon them, and had the right to rely upon them, and would not have issued the policy had the obligee made true answers.

The judgment is reversed, and the cause remanded with instructions to dismiss the action.

, *Reversed.*

Chief Justice Gabbert and Mr. Justice Steele concur.