CHARLES W. GLIDDEN *vs.* UNITED STATES FIDELITY AND GUARANTY COMPANY.

Suffolk.    January 15, 1908. — February 29, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Insurance*, Of honesty of employee.    *Bond.*    *Guaranty Company.*    *Evidence*, Declarations of deceased persons.

In an action against a guaranty company on a bond by which the defendant agreed to make good to the plaintiff any pecuniary loss he might sustain from any dishonesty of a certain employee, if it appears that the defendant issued the bond relying upon a statement in writing signed by the plaintiff that he had examined the accounts of the employee at a date a week before the date of the bond and found them correct in every respect up to that date, and if the statement was not true and the employee at that time was a defaulter to a large amount and a proper examination of his accounts would have disclosed that fact,

the defendant cannot be held liable for a breach of the condition of the bond by the dishonesty of the employee causing loss to the plaintiff.

In an action against a guaranty company on a bond by which the defendant agreed to make good to the plaintiff any pecuniary loss he might sustain from any dishonesty of a certain employee, where it appears that the defendant issued the bond relying upon a statement in writing signed by the plaintiff that he had examined the accounts of the employee at a date a week before the date of the bond and found them correct in every respect up to that date, and an auditor has found that this statement was not true, that the employee at that time was a defaulter to a large amount and that a proper examination of his accounts would have disclosed that fact, and also has found that a merely cursory examination of the checks drawn against the plaintiff's bank account and paid would have disclosed to the plaintiff several obvious forgeries and probably several conversions of sums of money wrongfully drawn over the genuine signature of the plaintiff by the employee, the plaintiff does not acquire the right to have his case go to the jury by introducing in evidence certain checks forged by the employee and other genuine checks signed by himself to show their similarity, nor by showing that he was not an educated man and was not a practical bookkeeper, that his system of bookkeeping was very crude, and that he discovered the dishonesty of his employee only a day or two before the employee absconded and before that time had had the greatest trust in him.

In an action where the original plaintiff has died and the executor of his will or the administrator of his estate has been admitted to prosecute the action, a declaration made by the original plaintiff relating to a material matter within the personal knowledge of the declarant is not admissible under R. L. c. 175, § 66, until it has been offered under that section and the presiding judge has found that it was made in good faith before the commencement of the action.

CONTRACT against a corporation, organized under the laws of the State of Maryland, as surety upon a bond in the sum of $1,000, dated November 7, 1900, given by one Sutherland, a clerk in the employ of the plaintiff, to insure the honesty of Sutherland. Writ dated February 6, 1901.

On suggestion of the death of the plaintiff the surviving executor of his will was admitted to prosecute the action. The case was referred to Wade Keyes, Esquire, as auditor. He reported in favor of the defendant, upon the ground that the original plaintiff in his application to the defendant for the bond had made material misrepresentations which avoided the bond. The statements in the application are quoted in the opinion.

In the Superior Court the case was tried before *Gaskill*, J.

At the trial the plaintiff read the auditor's report, stating that he proposed to contradict such findings of the auditor as were adverse to him by other evidence. The plaintiff then introduced in evidence certain checks testified to have been forged by Sutherland, and certain genuine checks of the original

plaintiff for the purpose of comparison of the handwriting, and these were exhibited to the jury, and all the books kept by the original plaintiff at the date of the application likewise were introduced in evidence.

The plaintiff also introduced the oral evidence of various witnesses, tending to prove that Sutherland was, in fact, of good reputation among his friends and associates, and that he did not drink intoxicating liquor to excess and never was seen under the influence of liquor by persons who saw him almost daily during his employment by the original plaintiff, who only discovered the dishonesty of Sutherland a day or two before the latter absconded, and before that time had the greatest trust in him, and was greatly surprised and grieved when he learned of Sutherland's defalcation; that the original plaintiff was not an educated man and was not a practical bookkeeper; and that his system of bookkeeping was very crude.

One Parks, a witness for the plaintiff, testified that he was a public accountant and that he was employed by the original plaintiff early in December, 1900, to examine his accounts; that the original plaintiff said that he had had no intimation that anything was wrong until a few days earlier, and that no one was more surprised than he. The witness also said that the original plaintiff's system of bookkeeping was crude, and that his books consisted of a diary, check book and ledger. Being asked how Sutherland had carried on his peculations, he said that it had been done by collecting rents and not accounting for them, and that in one instance Sutherland had drawn a check for an amount larger than the stub indicated. The witness testified that he worked two weeks on the accounts, and that his examination covered a period from January 1, 1900, to the time of Sutherland's disappearance. On cross-examination he testified that Sutherland was short in his accounts $3,000 on October 31, 1900.

The findings of the auditor are stated in the opinion. The defendant offered no evidence, but at the conclusion of the plaintiff's evidence requested the judge to direct a verdict for the defendant. The judge thereupon ordered a verdict for the defendant; and the plaintiff alleged exceptions. If the judge was in error in directing a verdict for the defendant, judgment is to be entered for the plaintiff in the sum of $1,000, with in-

terest from the date of the writ; otherwise, judgment was to be entered for the defendant upon the verdict.

*G. F. Ordway*, for the plaintiff.

*F. E. Bradbury*, for the defendant.

SHELDON, J.  The defendant by the bond sued upon undertook to make good to the plaintiff such pecuniary loss as he might sustain from any dishonesty of one Sutherland, who then had been for more than a year employed by the plaintiff as a clerk.  There has been a breach in the condition of the bond; and the question now presented is whether it can be enforced against the defendant.  The defendant issued the bond upon the faith of a written statement signed by the plaintiff, and containing certain statements material to the defendant's undertaking.  The auditor has found that these statements were false, and also that the plaintiff did not disclose to the defendant material facts within his knowledge, but suppressed them, and thereby misled the defendant into issuing the bond, which the defendant would not have done if it then had known what the plaintiff knew about the habits and reputation of Sutherland. It is not contended that the provisions of R. L. c. 118, §§ 59, 73, (see now St. 1907, c. 576, §§ 59, 73,) are applicable to this instrument.  The question accordingly is whether there is any evidence to control the auditor's findings.

The statements made by the plaintiff were as follows: " He [Sutherland] has always, to the best of my knowledge and belief, given satisfaction in his personal conduct and performance of duties, and kept his accounts faithfully and without default.  When last examined or audited by me, on the thirty-first day of October, 1900, all the accounts of his office were found in every respect correct up to October 31st, 1900.  He has not been, nor is he at present, so far as I know or believe, in arrears or default, or with unsettled balance, in this or any previous service.  I know of nothing concerning his habits or antecedents, affecting his title to confidence, and I know of no reason why the guarantee hereby applied for should not be granted."

Manifestly the plaintiff's statement that he had examined Sutherland's accounts on October 31, 1900, a week before the date of the defendant's bond, and found them correct in every respect up to that date, was material to the defendant's under-

taking.   It bore directly upon the nature and extent of the risk which the defendant agreed to bear ; and if in fact this representation was false, whether intentionally or from honest mistake on the part of the plaintiff, it plainly increased the risk, and the plaintiff could not hold the defendant to the agreement which it had made upon the faith of this statement among others.   This principle is settled by our own decisions as to ordinary contracts of insurance. *Rainger* v. *Boston Mutual Life Association*, 167 Mass. 109.   *Cobb* v. *Covenant Mutual Benefit Association*, 153 Mass. 176.   *McCoy* v. *Metropolitan Ins. Co.* 133 Mass. 82.   *Campbell* v. *New England Ins. Co.* 98 Mass. 381, 396. *Towne* v. *Fitchburg Ins. Co.* 7 Allen, 51.   The question has been expressly decided in other courts in actions upon agreements like the one here before us. *Warren Deposit Bank* v. *Fidelity & Deposit Co.* 116 Ky. 38.   *Carstairs* v. *American Bonding & Trust Co.* 116 Fed. Rep. 449.   The principle involved has been often recognized and is of general application. *Smith* v. *Bank of Scotland*, 1 Dow, 272, 292.   *Railton* v. *Mathews*, 10 Cl. & Fin. 934.   *Lee* v. *Jones*, 17 C. B. (N. S.) 482.   *Franklin Bank* v. *Cooper*, 36 Maine, 179; *S. C.* 39 Maine, 542.   *Graves* v. *Lebanon National Bank*, 10 Bush, 23.   *Model Mill Co.* v. *Fidelity & Deposit Co.* 1 Tenn. Ch. App. 365.   *Issaquah Coal Co.* v. *United States Fidelity & Guaranty Co.* 126 Fed. Rep. 89.   *Carrollton Furniture Manuf. Co.* v. *American Credit Indemnity Co.* 115 Fed. Rep. 77.   There is nothing in *Hudson* v. *Miles*, 185 Mass. 582, *Winthrop* v. *Soule*, 175 Mass. 400, or *Child* v. *Boyd & Corey Manuf. Co.* 175 Mass. 493, at variance with what we have said.

Nor do we find any evidence to control the finding of the auditor that this statement was untrue, made for the stated reason " that a merely cursory examination of checks drawn against his [the plaintiff's] bank account for that period, and paid, if he had made it, would have disclosed to him several obvious forgeries, and presumably several conversions of funds wrongfully drawn over the genuine signature of the plaintiff by . . . Sutherland."   Examination of the forged checks, however good the imitation of the plaintiff's signature might be, would scarcely tend to show that they would have deceived himself, who knew just what checks he had entrusted to Sutherland ; nor would his

lack of education and deficiencies as a bookkeeper tend to show that he had examined and audited Sutherland's accounts and found them correct. The assertion made by the plaintiff in his statement that he had made such examination and audit is not made competent evidence under R. L. c. 175, § 66, by reason of the plaintiff's death before the trial of the case, because it does not appear to have been offered in evidence under that statute, and was not found by the judge to have been made in good faith, which is made by the statute itself one of the conditions precedent to its admissibility. *Dickinson* v. *Boston,* 188 Mass. 595, 597. *Dixon* v. *New England Railroad,* 179 Mass. 242, 245. Such a declaration as this hardly could have been made in good faith unless actually known at the time by the declarant to be true. There is no question made that Sutherland was at this time a defaulter to a large amount, and that a proper examination of his accounts would have disclosed the fact. Under these circumstances, it was the right of the defendant to have a verdict ordered in its favor; and we need not consider whether there was evidence on which the jury might have reached conclusions different from the other findings of the auditor.

*Exceptions overruled.*