SUNDERLAND ROOFING & SUPPLY COMPANY, APPELLANT, v. UNITED STATES FIDELITY & GUARANTY COMPANY, APPELLEE.

FILED JUNE 25, 1909.    No. 15,573.

Insurance: CONTRACT OF INDEMNITY: BREACH OF WARRANTY. A written statement made by an employer to a bonding company to the effect that the accounts of applicant's cashier have been examined upon a certain date and were found to be correct, with cash and securities on hand to balance, which statement is in-

tended to and does enter into a contract between said parties indemnifying the employer against said cashier's dishonesty, and induces the execution thereof, is in the nature of a warranty, and, if false in a material part, will defeat recovery on the bond for the delinquency of such employee.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE.  *Affirmed.*

*Baldrige & De Bord,* for appellant.

*McGilton, Gaines & Smith,* contra.

ROOT, J.

This is an action to recover on a fidelity bond and a renewal thereof.  The district court directed the jury to find for defendant, and plaintiff appeals from the judgment rendered upon their verdict.

1. One Snyder in April, 1904, had been in plaintiff's employ for a year and two months as bookkeeper and cashier.  Defendant had guaranteed Snyder's financial fidelity to plaintiff for the year ending April 1, 1904. April 25, 1904, Snyder applied to defendant for another bond for the benefit of his employer for the year ending May 1, 1905, and sent with his application plaintiff's certificate, stating, among other things, that his accounts were audited April 23, and were correct in every particular.  Defendant desired further information, and sent plaintiff a list of printed questions, which were answered on the same instrument.  Thereupon the bond first described in the petition was executed.  In answer to said questions, plaintiff by its secretary stated that Snyder was its cashier; that he handled incoming money for it and collected in the city (Omaha); that he would not be authorized to pay out cash in his custody in any amounts on plaintiff's account, and that he accounted to the secretary of plaintiff daily for funds and securities.  The following questions and answers also appear in the statement last referred to: "9. Q. Is he required

to make deposits in bank, if so, how often? A. No. 13. Q. When were his accounts last examined? A. 23d. 14. Q. Were they at that time in every respect correct, and proper securities and funds on hand to balance? A. Yes. 15. Q. Is there now or has there been any shortage due you by applicant? A. No. 16. Q. Is he now in debt to you? A. No." Plaintiff was informed by defendant that its answers to said questions would be taken as the basis of the bond, if issued, and as conditions precedent for said undertaking and any renewal thereof. The bond recites that it is issued in consideration of the premium paid, and upon the faith of said statements, which plaintiff warrants to be true, and as a condition precedent to the employer's right to recover upon the bond; that if said written statement is in any respect untrue, the bond shall be void.

Defendant alleges that the statements made in the certificate sent with Snyder's application were each and all untrue, and that the foregoing answers were each false and untrue, for that at the time said statement was made and answers were given Snyder was short $100 in his accounts, which fact an examination of plaintiff's books would have disclosed. The evidence indicates that Snyder's books and accounts were correct and his conduct honest up to the month of April, 1904. On the 15th day of that month he falsely increased the footing of accounts payable in the cash book $100, and failed to account for that sum. That subsequent to May 1, 1904, Snyder embezzled continuously from plaintiff during that and the following year, and by false entries in the books under his control, by padded pay rolls and other devices, kept the general ledger in balance so that the monthly trial balances submitted to his employers, indicated a correct course of business, and that he had accounted for the funds in his possession or under his control. It seems to have been the course of business in plaintiff's establishment for Snyder to submit to the secretary and president trial balances about the middle

of one month, to exhibit the condition of the corporation at the close of the preceding month's business. Accompanying this trial balance were sheets containing an analysis of plaintiff's accounts with individual customers, which indicated the name of every purchaser who was indebted to plaintiff, and, in a general way, the age and amount of each account. The secretary and general manager would examine those statements and the general trial balance. Under the circumstances it was impossible for them during the middle of the month, to count the cash that was on hand the last of the preceding month, and the trial balance could only be verified in the improbable event that all cash received on the last day of the month had been deposited in the bank that same day. The transcripts submitted showing the condition of plaintiff's affairs at the close of business March 31, 1904, were thus examined April 23, 1904; but the accounts kept by Snyder between those days were not examined until subsequent to the execution of the bond in suit.

It is argued by plaintiff that the thirteenth interrogatory did not call for an examination of Snyder's books, but of his accounts; that plaintiff's officer was not asked the last date in the accounts examined; and that Edgerly, the secretary, did not know nor believe that Snyder was dishonest or that his accounts were incorrect; that the statements were representations merely, were believed to be true, were not relied upon by defendant, and that the jury, and not the court, should determine the good faith of the secretary, the materiality of the statements made and whether or not defendant relied thereon. If the thirteenth interrogatory stood alone and was considered without reference to the purpose for which the information was sought, it might be construed as plaintiff argues, but, when contemplated in connection with the fourteenth interrogatory and with relation to said purpose, it cannot in reason be thus interpreted. The fourteenth interrogatory not only asks if the ac-

counts were correct, but whether at "that time" there were securities and funds on hand to balance. "That time" is the date the examination was made. The funds and securities on hand one day would rarely, if ever, balance the accounts and books of any preceding day. Nor could an auditor ascertain by inspection and computation on the 23d day of a month the funds and securities that were on hand the last day of the preceding month. Furthermore, if the accounts were not to be inspected down to the date of the examination, there is nothing, in the language employed to indicate that any particular antecedent day should be selected as the time for striking a balance and inspecting the cash and securities on hand. However much counsel may disagree upon the thought embodied in the questions submitted, we do not think it possible for any unprejudiced business man to read them and come to any conclusion other than that they could not be answered truthfully, or so as to give the information requested, unless the accounts were examined down to the date of inspection and the cash was counted upon that day. This was not done by the secretary, nor by any one else for the company. The thirteenth and fourteenth questions do not call for opinions only, at least such is not the case so far as the date of the examination of the accounts and cash are concerned. It may be said that the $100 defalcation would not have been discovered on the 23d if the cash had been counted and the books examined that day. This we do not know, nor can any individual other than the absconding cashier inform us. He may have been short on the 23d, more than the $100 embezzled on the 15th. It is true that Rose, the expert, testified that there were no irregularities in the accounts between the 15th and 23d of April, but he could only follow the entries in the books, and, without knowledge of the actual cash on hand, it would be necessary to accept those entries as reflecting actual conditions. It is not improbable that the false entries made covered anterior pecula-

tions that had aggregated an amount which Snyder thought unsafe to carry on his books as cash in the drawer. In any event, defendant was entitled to have an effort made, whether it was successful or not, to have the accounts examined down to the date certified, and the cash counted on that day. It is doubtless true that the rules applicable to the interpretation of life or fire insurance policies are pertinent in actions upon fidelity bonds, and that, if such an undertaking is reasonably susceptible of two constructions, the one most favorable to the assured will be adopted, provided that it is consistent with the objects for which the bond was given. *American Surety Co. v. Pauly,* 170 U. S. 133; *American Bonding & Trust Co. v. Burke,* 36 Colo. 49. In the instant case the parties interested have specifically agreed that the statements referred to shall become a part of their contract, the basis of the bond, and a condition precedent to a recovery thereon. With but few exceptions in actions upon fidelity bonds, such statements are held to be warranties upon the truth whereof depends the right to recover. *Rice v. Fidelity & Deposit Co.,* 43 C. C. A. 270; *Carstairs v. American Bonding & Trust Co.,* 54 C. C. A. 85; *Warren Deposit Bank v. Fidelity & Deposit Co.,* 116 Ky. 38; *American Bonding & Trust Co. v. Burke,* 36 Colo. 49; *Model Mill Co. v. Fidelity & Deposit Co.,* 1 Tenn. Ch. App. 365; *Livingston & Taft v. Fidelity & Deposit Co.,* 76 Ohio St. 253. Counsel, however, assert that this court is committed to a contrary rule. *Ætna Ins. Co. v. Simmons,* 49 Neb. 811, *Kettenbach v. Omaha Life Ins. Co.,* 49 Neb. 842, and *Ætna Life Ins. Co. v. Rehlaender,* 68 Neb. 284. We are satisfied with the principles announced in those cases as applied to the facts therein considered.

In *Ætna Ins. Co. v. Simmons, supra,* it was claimed that the assured in his application for fire insurance had overvalued the property thereafter insured. In *Kettenbach v. Omaha Life Ins. Co.* and *Ætna Life Ins. Co. v. Rehlaender, supra,* the court dealt with statements made

by the assured in his application for insurance with reference to his health. From the very nature of things the insurance company in all of those cases must have known that the applicant was giving them the result of his judgment, whereas in the instant one such is not the case concerning the date upon which and down to which the cashier's accounts were claimed to have been examined and found to be correct. Nor is it reasonable to hold that defendant did not rely upon the information given, or that it was not an inducement for the execution of the bond. Symington, defendant's secretary, superintendent of its fidelity department, and the individual who conducted the correspondence with plaintiff concerning the bond in suit, testified that they relied particularly upon the statement that Snyder's accounts were examined and found to be correct on the 23d of April, 1904. There is nothing in the record that directly or by inference contradicts this testimony, and, if the jury had been requested to find whether defendant relied upon said answers and it had found for plaintiff, the evidence would not have supported the verdict. Counsel argue that Symington did not have authority to pass upon the sufficiency of the showing made by plaintiff, and refer to section 4, art. 9 of defendant's by-laws. The by-law is a grant of power to certain executive officers, and does not prohibit the superintendent of its fidelity department doing just what Symington did in the instant case. So far as the record advises us, the bond in suit was issued according to the usual course of defendant's business.

2. Concerning the renewal of the bond for one year from May 1, 1905, it is sufficient to say that it was agreed between the parties that the statement made in April, 1904, should control not only the bond that was issued May 1, 1904, but any renewal thereof. In addition, plaintiff in April, 1905, certified that the books and accounts of Snyder had been examined by it on that day and found to be correct in every respect. The same method was employed in 1905 as in 1904 in inspecting

798          NEBRASKA REPORTS.          [VOL. 84

Sunderland Roofing & Supply Co. v. United States Fidelity & Guaranty Co.

the cashier's accounts. The books were not examined, not even the footings of the respective accounts; but the analysis of unpaid accounts was inspected to ascertain the condition of the credits due the company, and the trial balance from the general ledger was examined to ascertain whether the books were in balance. The actual cash on hand was never ascertained and checked against the transcript submitted by the cashier. The items in the pay roll were never footed and compared with the check drawn by Snyder to pay the employees for that month, nor were the vouchers or sale tickets ever compared with the record made by him. Snyder deposited plaintiff's cash and disbursed the money paid out for employees' wages, so that his opportunities were ample for the fraud and deception practiced by him. Plaintiff had represented to defendant that its cashier was not and would not be authorized to perform either of said functions. Under the circumstances, plaintiff must have known that it had not taken any precaution whatever to protect itself against the embezzlement of its funds by Snyder; that the cashier's books and accounts were examined by him, and not it; and that it was not giving defendant any substantial information concerning the state of Snyder's accounts.

We do not approve technical defenses in cases like the one at bar, but common honesty dictates that the assured should be neither untruthful nor negligent in answering questions propounded to it for the purpose of securing material information concerning the risk that a bonding company is asked to assume. If the assured is either untruthful or negligent and misleads the bonding company, the employer, and not the surety company, should stand the loss made possible thereby. We have not examined the defense argued in defendant's brief that Snyder's duties were increased, and that he was permitted to pay out plaintiff's money and deposit its cash contrary to the statement made by plaintiff, because that defense was not specifically pleaded.

We do not find any error prejudicial to plaintiff in the record, and the judgment of the district court is

AFFIRMED.

REESE, C. J., absent and not sitting.