## GREEN v. INTERSTATE CASUALTY CO.

(Circuit Court of Appeals, Fifth Circuit. March 3, 1919.)

No. 3253.

PRINCIPAL AND SURETY ⬤⟹57—FIDELITY BONDS—RENEWALS—AVOIDANCE FOR BREACH OF WARRANTIES.

> A surety company, which executed a bond, insuring the fidelity of a bank cashier, and annual renewals thereof, each "subject to all the covenants and conditions" of the original bond, and made in consideration of a written statement by the bank that the cashier was not then in default, which statements were by the original bond made warranties, *held* not liable for defaults occurring after the original term, where it was shown that the cashier was in default during such term, and that all renewal statements to the contrary were false.

In Error to the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

Action at law by D. L. Green, as receiver of the Bank of Panama City, against the Interstate Casualty Company. From the judgment, plaintiff brings error. Affirmed.

Sterling A. Wood, of Birmingham, Ala. (John H. Carter, of Marianna, Fla., on the brief), for plaintiff in error.

J. T. Stokely and R. H. Scrivner, both of Birmingham, Ala., for defendant in error.

Before WALKER and BATTS, Circuit Judges, and BEVERLY D. EVANS, District Judge.

WALKER, Circuit Judge. This was an action by the plaintiff in error, suing as the receiver of the Bank of Panama City, on a bond and renewals thereof given to the bank by the defendant in error, the Interstate Casualty Company, as surety of one McKinzie, who was the cashier of the bank. By the original bond the surety agreed "to make good and reimburse to the obligee, to the extent of ten thousand dollars, any and all pecuniary loss sustained by the obligee of money, securities, or other personal property in the possession of the principal, or for the possession of which he is responsible, by any act of dishonesty on the part of the principal in the discharge of the duties of his office or position as set forth in said statement referred to, amounting to larceny or embezzlement, and which shall have been committed during the continuance of this bond, or any renewal thereof, and discovered during said continuance, or within" a time specified. Prior to the mak-

ing of the bond the obligee made a written statement to the surety, which was referred to in a clause of the bond immediately preceding the following one:

"Now, therefore, in consideration of the sum of twenty-five ($25.00) dollars paid as a premium for the period from October 1, 1910, to October 1, 1911, at 12 o'clock noon, and upon the faith of the said statement as aforesaid by the obligee, and any subsequent statement or statements, all of which statements the obligee hereby warrants to be true, it is hereby agreed and declared that, subject to the provisions and conditions herein contained, which shall be conditions precedent to the right on the part of the obligee to recover under this bond, the surety shall," etc.

Each of the renewals was evidenced by an instrument, called "Continuation Certificate," a copy of one of which is the following:

"In consideration of the sum of thirty no/100 dollars, the Interstate Casualty Company hereby continues in force bond No. 1171-10 in the sum of ten thousand and no/100 dollars, on behalf of Oscar Paul McKinzie, in favor of Bank of Panama City, for the period beginning the first day of October, 1911, and ending on the first day of October, 1912, subject to all the covenants and conditions of said original bonds heretofore issued, dating from the first day of October, 1910.

"Witness the signature of the president and assistant secretary, this 20th day of September, 1911.            Henry B. Gray, President.
    "[Seal.]                                Cory F. Baker, Asst. Secretary."

Prior to the making of each continuation certificate the obligee gave to the surety a written statement, a copy of one of which is the following:

"To the Interstate Casualty Company:
"This is to certify that the books and accounts of Mr. Oscar P. McKinzie were examined by us from time to time in the regular course of business and we found them correct in every respect, all moneys or property in his control or custody being accounted for, with proper securities and funds on hand to balance his accounts, and he is not now in default.
"He has performed his duties in an acceptable and satisfactory manner, and no change has occurred in the terms or conditions of his employment as specified by us when the bond was executed.
"Dated at Panama City, Fla., this 27th day of September, 1911.
                          . "[Signature of Employer]   Bank of Panama City.
                                              "By G. W. West,
    "[Bank Seal]                          President [Official Capacity]."

The renewals in 1912, 1913, and 1914 were accomplished in like manner. The bill of exceptions contains the following statement:

"It was admitted that a tender of the premiums paid on the bond, with interest, had been timely made, and each tender had been made good by bringing the money in open court, which tender had been and was refused by the plaintiff."

The evidence adduced was without conflict to the effect that at the time of each of the renewals McKinzie was in default, having misappropriated to his own use funds of the bank while acting as its cashier. It did not show that he was in default at the time the original bond was made. The court instructed the jury to find for the plaintiff for the agreed amount of the shortage which accrued during the period covered by the original bond, with interest on that amount. It ruled that as to all other shortages the plaintiff was not entitled to recover. The last-mentioned ruling was duly excepted to.

By the terms of each of the continuation certificates the obligation it evidenced was "subject to all the covenants and conditions of said original bond heretofore issued, dating from the 1st day of October, 1910." This resulted in making the covenants and conditions of the original bond parts of the renewal agreements as effectually as if they had been copied in the continuation certificates. It follows that each continuation certificate is to be regarded as containing the provision warranting the truth of the statement referred to in the original bond and of any subsequent statement or statements. That included a warranty of the truth of the statement made prior to and in contemplation of the issue of each continuation certificate. Each of those subsequent statements was false in its assertion, with reference to McKinzie, that "he is not now in default."

· The bank had notice from the terms of the original bond that it was issued in reliance upon statements made in its behalf to the surety company, and that, in the ordinary course, renewals, which the terms of the bond showed were in contemplation, might also be based upon further statements to be made on behalf of the bank. In view of these circumstances, and of the additional one that each continuation certificate expressly made the obligation it evidenced subject to the covenants and conditions of the original bond, one of the provisions of which was a warranty of the truth of the statement specifically referred to in the bond and of any subsequent statement, there is no room for holding the surety company bound by a continuation certificate issued on the faith of a statement which was warranted to be true, but was false in a respect material to the obligation which the surety company conditionally incurred. Guarantee Co. v. Mechanics, etc., Co., 183 U. S. 402, 22 Sup. Ct. 124, 46 L. Ed. 253; Fidelity & Deposit Co. v. Courtney, 186 U. S. 342, 22 Sup. Ct. 833, 46 L. Ed. 1193.

It is not fairly questionable that the statement in reference to the cashier that "he is not now in default" was one of a fact material to the contemplated undertaking of the surety company. Max J. Winkler Brokerage Co. v. Fidelity & Deposit Co., 119 La. 735, 44 South. 449. The terms of its undertaking were such as to make the truth of that statement a condition precedent to the right on the part of the obligee to recover on the renewals of the bond. As the evidence without conflict showed that the quoted statement was false, the court did not err in ruling that the plaintiff was not entitled to recover for shortages which occurred during the periods covered by the renewals of the bond. The evidence disclosed a state of facts under which, by the explicit terms of the renewal agreements, the surety company was not to be liable for shortages occurring during the periods covered by the renewals.

In the course of the argument in behalf of the plaintiff in error attention was called to a number of decisions with reference to contracts not based on statements warranted to be true. Those decisions are not pertinent to the question presented in the instant case, which is a suit on contracts based on statements warranted to be true, but which turned out to be false.

Affirmed.