SMITH, Superintendent of Banks, v. FEDERAL SURETY
CO., Appellant.

(243 N. W. 664)

(File No. 6903.   Opinion filed July 8, 1932.)

*Sterling, Clark & Grigsby,* of Redfield, and *G. M. Caster,* of Lake Andes, for Appellant.

*T. B. Thorson,* Special Counsel, State Banking Department, of Rapid City, and *Bogue & Bogue,* of Parker, for Respondents.

MISER, C.   The fidelity bond on which the claim against the appellant surety company is based is in part as follows: "Whereas, Helmer Hegness * * * has been appointed to the position of president in the service of the Farmers' Security State Bank, Centerville, South Dakota, * * * Federal Surety Company, * * * hereby covenants and agrees that it will * * * reimburse the employer to the extent of the sum of $5,000.00 * * * for loss of money, securities, or other personal property belonging to or in possession of the employer or for which the employer may be responsible to others, which the employer shall sustain by reason of any act or acts constituting larceny, fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction, wilful misapplication or misappropriation, or crime committed by the employee (directly or through connivance with others) during the continuance of this bond. * * *"

From February 29, 1924, until January 27, 1927, when respondent superintendent of banks took charge of it, Hegness was the president of respondent bank.   Respondents claim that during that period, as a result of wrongful and willful misappropriations and abstractions of said Hegness, the bank suffered losses in transactions and amounts as follows: (1) Farmers' Machinery Company, $1,063.50; (2) Farmers' Machinery Company, $519.20; (3) Thomas Hove certificate of deposit, $750; (4) Hegness salary overdraft, $450; (5) Sandve notes, $900; (6) Anderson note, $1,500; (7) Hegness note $800; (8) Johnson note, $1,100—total $7,082.70. They ask reimbursement to the extent of the $5,000 penalty of the bond.

Appellant first contends that there can be no recovery on the bond because there is no evidence that the bank has sustained any actual and final loss of money, securities, or property. To illustrate: In the Anderson transaction, Hegness induced Anderson to sign a note for $1,500 payable to respondent bank under promises, which Anderson believed, one of which was that he would never have to pay them. By means of this note and the entries thereof on the books of the bank, Hegness caused it to appear that a loan was being made to Anderson, whereas the money was taken by Hegness and was used by him for his individual purposes. Although the Sandve transaction differs in other respects, the foregoing statement applies also to it. After reviewing the evidence in the Sandve transaction appellant argues: "If, then, the accommodation maker, Sandve, is liable on these notes and financially responsible, how can it be said that the bank has sustained a loss by this transaction? We concede that if an attempt had been made to collect these notes by suit and a successful defense had been interposed, or if judgment had been recovered and execution returned unsatisfied because of 'no goods found' there might be some liability upon these accommodation notes, including the Anderson and Johnson notes hereafter referred to. But no such attempt has been made, and the evidence affirmatively establishes that the man is good for the amount of these notes."

Appellant contends that the bond executed by appellant is not a contract of indemnity against liability but a contract of indemnity against loss, and that respondents cannot recover until they show actual final loss. It cites, among other authorities, Morse on Banks and Banking (6th Ed) pp. 69, 126; section 1470, R. C. 1919; George Birrell, Inc., v. Fidelity & Casualty Co., 193 Iowa, 860, 188 N. W. 26, 29.

The bond in the case at bar contains a covenant and agreement on the part of the surety company to "reimburse the employer * * * for loss of money, securities or other personal property." It also contains nine conditions which are therein stated to be conditions precedent to any right of the employer to recover thereunder. In four of these, the word 'loss" is used twice or more times. The second of these conditions precedent is as follows: "Second: That any loss covered hereunder shall be discovered during the continuance of this bond or within twelve months after

its termination and that notice of any such loss shall be given * * * within ten days after the discovery of such loss; that an itemized statement of such loss, verified by affidavit, shall be filed with the Company by the Employer within ninety days after the date of said notice of loss; that * * * the Employer shall * * * render every assistance * * * for the purpose of enabling the company to procure reimbursement from such employee of any loss, damage or expense sustained by the company hereunder."

In Queenan v. Palmer, 117 Ill. 62, 619, 629, 7 N. E. 470, 613, 617, the Illinois Supreme Court says: "In its most general sense, the word 'loss' means any deprivation. In some instances it may mean that which can never be recovered, and in others that which is simply withheld, or that of which a party is dispossessed. Often the context assists to a clearer understanding of the words employed in a statute or written argument."

In Fitchburg Savings Bank v. Massachusetts Bonding & Ins. Co., 274 Mass. 135, 174 N. E. 324, 328, 74 A. L. R. 274, the Massachusetts court says: "A definition of the loss for which the defendant as surety is liable as the net amount irrecoverable after all rights against others than the surety have been exhausted clashes with several sections of the bond. * * * In this bond the word 'loss' means the deprivation or dispossession of money or property of the bank due to dishonest, criminal or fraudulent acts of its officers, regardless of the security the bank has for the loss, and that the 'loss' occurred and was suffered by the plaintiff, without regard to its possible remedies, when its funds in fact were diverted * * * through the fraud and dishonesty of its treasurer. Forbes v. Manufacturers' Ins. Co., 1 Gray [Mass.] 371; Qweenan v. Palmer, 117 Ill. 62, 619, 629, 7 N. E. 470, 613; Mitchell Grain & Supply Co. v. Maryland Casualty Co., 108 Kan. 379, 384, 195 P. 978, 16 A. L. R. 1488; First National Bank of Crandon v. U. S. Fidelity & Guaranty Co., 150 Wis. 601, 607, 137 N. W. 742; American Surety Co of New York v. Lawrenceville Cement Co. (C. C.) 96 F. 25, 30; Champion Ice Manuf. & Cold Storage Co. v. American Bonding & Trust Co., 115 Ky. 863, 874, 75 S. W. 197, 103 Am. St. Rep. 356. It follows that the plaintiff could sue the defendant on its bond without proof that it had then sustained some actual defined loss, not merely nominal, as the result of the transaction in question."

So, in the case at bar, if the word "loss" in that part of the bond heretofore quoted was given the restricted meaning for which appellant contends, it would clash with the context of the bond. It may take years to determine the exact amount which may be irrecoverable from Hegness and those who may be liable on the paper he used in his various schemes to defraud the bank.

██ The restricted meaning for which appellant contends, is also inconsistent with the object for which the bond was given. Section 8957, R. C. 1919, as amended by chapter 96, Session Laws 1925, requires all bank "employees having access to or care of the funds and assets of the bank [to] must furnish a surety company bond * * * each of which bonds must have the approval of the superintendent of banks before it can be accepted." No superintendent of banks, having due regard for the welfare of a bank and its depositors, would approve a bond which clearly stated that payment thereunder was to be made as appellant herein contends. The language of the bond in suit having been prepared by the surety company, it must be construed in a sense consistent with the object for which the bond was given; it being reasonably susceptible of such construction. Morse on Banks and Banking (6th Ed.) § 17, p. 70; American Surety Co. v. Pauly, 170 U. S. 133, 144, 18 S. Ct. 552, 42 L. Ed. 977; Fitchburg Savings Bank v. Massachusetts Bonding & Insurance Co., 274 Mass. 135, 174 N. E. 324, 328, 74 A. L. R. 274; Farmers' & Merchants' State Bank v. United States F. & G. Co., 28 S. D. 315, 319, 133 N. W. 247, 36 L. R. A. (N. S.) 1152; Crouch, Ency. of Ins. Law, vol. 5, p. 4327; 9 C. J. 34.

Furthermore, appellant's undertaking "to reimburse the employer to the extent of the sum of $5000.00," etc., contains no language which indicates any intention to destroy the surety's usual privilege of subrogation to the indemnitee's right to recover from any who are liable to it for the loss. As stated by the Supreme Court of the United States in Aetna Casualty & Surety Co. v. Phœnix National Bank & Trust Co., 52 S. Ct. 329, 331, decided March 14, 1932: "It is both the object and the justification of subrogation that it makes exact indemnity the measure of the liability."

██ It may be, as appellant contends, that the evidence does not show the nonliability of Sandve, Johnson, and Anderson when

tested by the law relating to the liability of accommodation parties, Altfillisch v. McCarty, 49 S. D. 203, 207 N. W. 67, 48 A. L. R. 1270; nor their nonliability when tested by the law relating to the lack of authority of a bank officer to absolve an accommodation maker from liability, First State Bank v. McMahon, 45 S. D. 77, 185 N. W. 1014; Black Hills Trust & Sav. Bank v. Stenger, 59 S. D. 453, 240 N. W. 501. The liability of these makers may not be finally determined in a suit in which the makers are not parties. Anderson may not be liable to the bank on his notes, and Johnson be full liable on hers. But the fact of such liability and the ultimate collectibility of the notes would not absolve appellant from its present liability under its bond. 3 R. C. L. 484, § 111, "Banks." The bank has not collected on the notes which Hegness used to take money from it. The court is of the opinion that the word "loss" in the bond in suit does not have the restricted meaning for which appellant contends, but means rather "the deprivation or dispossession of" "money, securities, or other personal property belonging to or in possession of the employer or for which the employer may be responsible to others," which the employer shall sustain by reason of any act named in the bond, regardless of the ultimate collectibility of the notes which the employee may use in perpetration of his fraudulent, illegal, or dishonest purpose. See cases cited in Fitchburg Sav. Bank v. Mass. Bond. & Ins. Co., supra, 274 Mass. 135, 174 N. E. 324, 74 A. L. R. 274; State v. Beach, 147 Ind. 74, 43 N. E. 949, 46 N. E. 145, 36 L. R. A. 179; Buhl Highway Dist. v. Allred et al., 41 Idaho, 54, 238 P. 298.

■■ This construction of the word "loss" does not, however, absolve the obligee of the burden of proving that such loss was caused as was alleged in the complaint. Appellant contends that respondents have failed therein, the evidence showing Hegness to have already abstracted the money by creating large overdrafts against his personal account; that the deposit to that account of the Sandve and Hegness notes, though unlawful loans, and of the Hove certificate of deposit, though it was misappropriated, caused no "loss" but rather a diminution of the loss; that the "loss" was caused by withdrawing the money; and that the complaint does not allege a "loss" by overdrafts. It may appear to be a matter of little consequence whether Hegness first took the money by creating an overdraft in his account and later deposited banking paper

unlawfully obtained, or whether he deposited such paper and thereupon or later withdrew the proceeds thereof. See, however, the following series of cases: American Surety Co. v. North Texas Nat. Bank (Tex. Civ. App.) 14 S. W. (2d) 88; Royal Indemnity Co. v. North Tex. Nat. Bank (Tex. Com. App.) 25 S. W. (2d) 822; Royal Indemnity Co. v. North Tex. Nat. Bank (Tex. Com. App.) 34 S. W. (2d) 249; and Royal Indemnity Co. v. American Vitrified Products Co., 117 Ohio St. 278, 158 N. E. 827, 829, 62 A. L. R. 407, which, in the final decision of the Texas cases, was followed. In this case the Ohio court said that "the misappropriation of funds after the date of the bond, with which to pay his prior shortages, did not constitute a new pecuniary loss to the products company under the terms of the Royal Indemnity Company bond, for the reason that the products company had already sustained a pecuniary loss."

But while it is true that it is not alleged in respondent's complaint that the loss in the transactions of the Sandve notes and the Hegness notes was caused through abstraction by means of overdrafts, and it is also true that, by bill of particulars, these transactions were set out individually without allegations that loss was so caused, yet, by allegations which remain part of respondent's complaint after amendment thereof and additions thereto at the trial, it is sufficiently alleged that, by embezzlement, etc., Hegness took and converted to his own use $7,082.70 in money belonging to plaintiff bank as a result of which the bank suffered a loss of that sum. While, therefore, the evidence adduced shows that respondent could have so pleaded its cause of action as to have avoided any criticism of the sufficiency of the allegation and proof of loss in the Sandve and Hegness note transactions, the pleadings, as they remain, are broad enough to support the findings and judgment, and no harm to appellant is apparent in holding them sufficient. As to the Hove transaction, no opinion is expressed as to the sufficiency of allegation or proof for reasons hereinafter stated.

The next question is whether the evidence shows that loss was caused by acts coming within the prohibition of the bond. This may only be decided by examining the evidence in each transaction. This has been done, but no review of such evidence can be made herein without unduly extending this opinion. No opinion is ex-

pressed as to whether liability on the part of appellant in the Hove transaction and in the salary transaction has been shown. The amount involved in those two transactions aggregates only $1,200. They may be disregarded, and, if the other six transactions be sufficiently supported, there will remain a proven loss in excess of $5,000, the penalty of the bond, for which judgment was entered. As to the other six transactions the court is of the opinion that the proof is sufficient that a loss was caused by acts of Hegness constituting either fraud, dishonesty, theft, embezzlement, wrongful abstraction, willful misapplication, or misappropriation within the meaning of those terms as used in the bond. In every instance the funds so obtained went into the personal account of Hegness, were drawn out by him, and, when the bank failed, his account was overdrawn. The corresponding debits to loans and discounts and the making of simultaneous entries in the bills receivable register and liability ledger so as to make it appear that the bank had lawful good-faith loans to the persons against whom they were charged, were merely parts in process by which Halmer Hegness possessed himself of the "money, securities, or other personal property belonging to or in the possession of the Employer or for which the Employer (is) responsible to others," against the "loss" of which the employer bank was indemnified. Abstracting the funds of a bank may be done by one act or a succession of acts. It may be done under the color of loans, discounts, or checks. United States v. Breese (C. C.) 173 F. 402, 407. The officers of a bank can loot it under the guise of loans made to a third person. Aetna Casualty & Surety Co. v. Austin (Tex. Civ. App.) 285 S. W. 951, 953; Maryland Casualty Co. v. Farmers' State Bank & Trust Co. (Tex. Civ. App.) 258 S. W. 584, 587. The method of abstraction in the case last cited, though not identical with, has many points of resemblance to, the methods used in the case at bar.

Appellant next contends that the surety company was absolved of liability for all except the Anderson and Johnson transactions, by reason of the bond having been continued after the occurrence of those two transactions, in reliance on a "clearance" certificate hereafter mentioned.

The original bond was renewed by a continuation certificate on January 23, 1925, and again on February 11, 1926. The Anderson transaction occured in July, 1925; the Johnson transaction in No-

vember, 1925. The other transactions occurred after the second renewal of the bond. The facts of the Johnson transaction are as follows: Anna Johnson was first elected the cashier and one of the directors of the bank in July, 1925. Her sister, Ida, was a bookkeeper for the bank from November, 1925, until the bank closed. On November 28, 1925, shortly after Ida began to work for the bank, Helmer Hegness tried to induce her to buy $2,200 worth of stock in the bank. She refused. Hegness then told Anna to make out a note for $1,100 payable to the bank and told Ida to sign it. He told Ida that she would not have to pay the note, that he would pay it out of money which he had coming in about thirty days. She signed and delivered to him the note and also a check on the bank payable to Hegness. He credited the note to her account; charged it to loans and discounts and obtained the money by means of a check. The note has never been paid.

On January 13, 1925, the vice president of appellant company wrote to Hegness notifying him that his bond would come up for renewal on February 28, 1925. A certificate, referred to in the testimony as a "clearance certificate," was inclosed in the letter to Hegness with the following instruction: "Upon receipt of the certificate below, filled in and signed by you and forwarded with remittance for premium * * * a continuation certificate will be sent you." Hegness had the then cashier sign the enclosed clearance certificate, and returned it to appellant company with payment of premium. Thereupon the continuation certificate, dated January 23, 1925, was issued to the bank. On February 11, 1926, the company again wrote Hegness that the bond would again come up for renewal and again inclosed a form of clearance certificate for signature. Without waiting either for payment of premium or return of signed clearance certificate, the second continuation certificate was issued by appellant on February 11, 1926. The clearance certificate not being returned to appellant company, its general agent again wrote to Hegness, who, on March 30, 1926, forty-seven days after the bond had been continued by appellant, returned the clearance certificate signed by Anna Johnson. Anna Johnson then knew of the transaction between Hegness and her sister the previous November. This clearance certificate, as prepared for her signature, was identical with the form sent by appellant the preceding year and was as follows.

"To the Federal Surety Company:

"This is to certify, that the books and accounts of the above named employe were examined by us from time to time in the regular course of business, and we found them correct in every respect, all moneys and property in his control or custody being accounted for, with proper securities and funds on hand to balance his accounts, and he is not now in default.

"He has performed his duties in an acceptable and satisfactory manner, and we know of no reason why the guaranty bond should not be continued.

"Dated at Centerville, S. Dak., this 30th day of March, 1926.

> "Farmers' Sec. State Bank
> "Signature of Employer
>
> "By Anna Johnson
> "Cashier Official Capacity."

The trial court found that Hegness procured Anna Johnson to sign the clearance certificate without any authority from the board of directors and at a time when none of its members knew of any violation of the bond by Hegness. Appellant contends, however, that a bank cannot sue on a fidelity bond procured by its cashier for one of its officers and at the same time repudiate the statements made by the cashier upon which the bond was secured as being beyond the authority of the cashier to make. Appellant cites Willoughby v. Fidelity Co., 16 Okl. 546, 85 P. 713, 714, 7 L. R. A. (N. S.) 548, 8 Ann. Cas. 608; Cherry v. Fidelity Co., 205 U. S. 537, 27 S. Ct. 790, 51 L. Ed. 920; Bank of Hardinsburg & Trust Co. v. American Bonding Co., 153 Ky. 579, 156 S. W. 394; Wilce v. Royal Indemnity Co., 289 Ill. 383, 124 N. E. 635; Sunderland et al. v. U. S. F. & G. Co., 84 Neb. 791, 122 N. W. 25; National Surety Co v. Globe Grain & Mill. Co., 256 F. 601, 167 C. C. A. 631, 4 A. L. R. 552; Glidden v. U. S. F. & G. Co., 198 Mass. 109, 84 N. E. 143; United States F. & G. Co. v. Bank of Batesville, 87 Ark. 348, 112 S. W. 957, 958; McIntosh v. Dak. Trust Co., 52 N. D. 752, 204 N. W. 818, 40 A. L. R. 1021; and numerous other decisions. On this phase of the case respondents cite no authority nor discuss appellant's citations, but argue only the directors' ignorance of Hegness' wrongdoing.

The authorities cited abundantly support appellant's contention. There are, however, authorities to·the contrary. But there is a fact element conspicuously absent in the case at bar which is present in each of the cases cited by appellant and considered worthy of mention by the several courts deciding them. Thus in Willoughby v. Fidelity & Deposit Co., supra, the bond recited that the employer had delivered to the insurer certain statements in writing which, "together with any other statements in writing, hereafter made by the employer to the company relating to any such matters, do and shall constitute the basis and form part of this contract, or any continuation thereof, and shall be warranted." It was pointed out that in American Surety Co. v. Pauly, 170 U. S. 133, 18 S. Ct. 552, 42 L. Ed. 977, distinguished therein, it was not agreed that the statements of a president upon which a bond was obtained should constitute warranties and be the basis for the bond. In Bank of Hardinsburg & Trust Co. v. American Bonding Co., supra, it was expressly provided that answers to specific question were "to be taken as conditions precedent, and as the basis of the said bond applied for, and of any renewal or continuance or substitution of or for the same." In Wilce v. Royal Indemnity Co., supra, the employer expressly agreed that its answers made in a required statement "should constitute the basis of, and form a part of, the contract for the bond applied for or for any renewal of it." In Sunderland et al. v. U. S. F. & G. Co., supra, the bond was "issued in consideration of the premium paid, and upon the faith of said statements, which plaintiff warrants to be true, and as a condition precedent to the employer's right to recover upon the bond." In National Surety Co. v. Globe Grain & Mill Co., supra, the bond recited: "The above and foregoing statement and representations are each, every and all warranted by the employer to be true, and are made for the purpose of inducing the National Surety Company to become such surety." In Glidden v. U. S. F. & G. Co., supra, the opinion advises us that the surety company "issued the bond upon the faith of a written statement signed by the plaintiff." In United States F. & G. Co. v. Bank of Batesville, supra, the bond recited that "the employer has delivered * * * a statement in writing * * * which statement is made a part hereof * * * and upon the faith of said statement, etc.

In Green v. Interstate Casualty Co. (C. C. A.) 256 F. 81, 83, wherein the employer's certificate and the certificate of renewal are very like the clearance certificate and continuation certificate in the case at bar, the Circuit Court of Appeals of the Fifth Circuit said: "The bank had notice from the terms of the original bond that it was issued in reliance upon statements made in its behalf to the surety company, and that, in the ordinary course, renewals, which the terms of the bond showed were in contemplation, might also be based upon further statements to be made on behalf of the bank. In view of these circumstances, and of the additional one that each continuation certificate expressly made the obligation it evidenced subject to the covenants and conditions of the original bond, one of the provisions of which was a warranty of the truth of the statement specifically referred to in the bond and of any subsequent statement, there is no room for holding the surety company bound by a continuation certificate issued on the faith of a statement which was warranted to be true, but was false in a respect material to the obligation which the surety company conditionally incurred. Guarantee Co. v. Mechanics, etc., Co., 183 U. S. 402, 22 S. Ct. 124, 46 L. Ed. 253; Fidelity & Deposit Co. v. Courtney, 186 U. S. 342, 22 S. Ct. 833, 46 L. Ed. 1193."

In United States F. & G. Co. v. Muir (C. C. A.) 115 F. 264, 266, the employer's statement was, in substance, not unlike the clearance certificate in the case at bar. In that case the court said: "There is no question here of any warranty. It was entirely within the power of the surety company to have made some statement as to the cashier's past faithfulness a part of the policy, or even to refer in the policy to the application and employer's statement, making them a part of the contract; but, for some sufficient reason, it chose not to do so."

In holding the surety company liable, the federal court, following American Surety Co. v. Pauly, distinguished the latter case from Guarantee Co. v. Mechanics' Savings Bank & Trust Co., 183 U. S. 402, 22 S. Ct. 124, 46 L. Ed. 253, calling attention to the fact that the bond in the latter case contained a clause providing that any written answers made by the employer prior to the issuance of the bond or any renewal thereof should be held to be a warranty and form a basis of the guaranty.

But in the case at bar, whatever the authority or want of authority on the part of Anna Johnson to bind the bank by the clearance certificate, her statement or any like statement was not referred to in the policy nor in the continuation certificate. Neither in the nine express conditions precedent stated in the bond or in any other part thereof is there a provision that the statements contained in the application, if there was a written application, or the statements contained in any clearance certificate, were to be deemed warranties and a part of the contract. Not only is there no provision that the statement is to be part of the contract by inclusion or reference, but the continuation certificate expressly provides that "in consideration of the sum of $15.00 the Federal Surety Company hereby continues in force" the original bond "subject to all the covenants and conditions of said bond." Where the renewal receipt recites a renewal in accordance with the terms of the bond, it is a contract with the same terms as evidenced by the bond renewed. Cooley's Briefs on Insurance (2d Ed.) vol. 2, p. 1412; Commercial Bank v. Am. Bonding Co., 194 Mo. App. 224, 187 S. W. 99; Couch, Cyc. Ins. vol. 6, p. 4936.

We must therefore look to the bond itself in determining appellant's liability thereunder. The fourth condition precedent, upon which appellant places great reliance, is as follows: "That if, after the officers and directors of the employer learn of any loss which may be the basis of a claim hereunder, the employee is permitted to continue his employment, the company shall not be liable for any loss sustained during such continuation, unless it shall have consented to such continued employment in writing."

In Fidelity & Deposit Co. of Maryland v. Courtney, 186 U. S. 342, 22 S. Ct. 833, 841, 46 L. Ed. 1193, construing a clause of a bond sued on as follows: "That * * * if the employer shall at any time during the currency of this bond condone any act," etc.—the court said: "Assuredly, therefore, the conditions embodied in the stipulation to which we have referred * * * contemplated in the reason of things the execution of the duties which the contract imposed on the bank, either by the governing body of the bank, its board of directors, or by a superior officer, such as the president of the bank, having a general power of supervision over the business of the corporation, and vested with the authority to condone the wrongdoing or to discharge a faithless employee.

That is to say, the stipulation in all its aspects undoubtedly related to the bank, acting through its board of directors or through an official who, from the nature of his duties, was in effect the vice principal of the bank."

Notwithstanding the testimony of appellant's general agent that in allowing this bond to continue in force he relied on the clearance certificate, it is nevertheless apparent that in so doing he relied upon an empty form. Giving this testimony full value, it is yet apparent that this clearance certificate—not referred to in the bond or in the continuation certificate; sent by appellant for signature to Hegness himself whose defalcations were to be insured against; signed by a subordinate of Hegness without authority of the board of directors and unaccompanied by any proof of authority; yet which a majority of the board of directors might have signed in entire good faith though mistakenly; couched in language designed to convey the minimum of factual information so combined with opinion that a subordinate might readily be induced by an interested superior to sign it, and especially forty-seven days after the continuation certificate had been actually delivered by appellant to the bank—such clearance certificate was an almost empty husk. That which might have been a warranty made by unquestioned authority had been minimized, by the force of business competition, into a mere office formality. There was not even language in bond or certificate of continuation to bring home knowledge to directors that a clearance certificate had been made so as to make the acceptance of the bond, if any, a ratification of the act of Anna Johnson as was the case in Maryland Casualty Co. v. First State Bank, 101 Okl. 71, 223 P. 701.

Of course there must be good faith in the transaction between obligee and surety; any taking advantage of the surety by withholding proper information would avoid the contract. Morse on Banks and Banking (6th Ed.) p. 80; Story's Eq. Juris, § 324; McIntosh v. Dak. Trust Co., 52 N. D. 752, 204 N. W. 818, 40 A. L. R. 1021. Notwithstanding the distinctions drawn between warranties and representations, the rule approved by the weight of authority seems to be that a misrepresentation of a material fact in reliance on which a contract of insurance is issued avoids the contract, whether the representation was made intentionally and knowingly or through mistake and in good faith. Cooley's Br. on

Ins. (2d Ed.) vol. 5, p. 3894. But, before appellant is entitled to be absolved from liability to respondent bank on this bond, worded as it is, renewed as it was, it must show, as it has not shown, that the certificate of continuance was issued in reliance on a misrepresentation of a material fact.

The judgment and order appealed from must be, and it is, affirmed.

CAMPBELL, P. J., absent and not sitting.
POLLEY, ROBERTS, and RUDOLPH, JJ., concur.
WARREN, J., concurs in result.